## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ADELA BAI, Individually and on Behalf of All Others Similarly Situated, | : : : : | **Civil Action No.:** |
| Plaintiff(s), | : : : | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | : : : | |
| TCP INTERNATIONAL HOLDINGS LTD., KAREL ROBERT DEN DAAS, ELLIS YAN, and BRIAN CATLETT, | : : : : : | <u>**JURY TRIAL DEMANDED**</u> |
| Defendants. | : : : | |

Plaintiff Adela Bai ("Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her complaint against defendants, alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding TCP International Holdings Ltd. ("TCPI" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of purchasers of TCPI securities between May 8, 2015 and November 5, 2015, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. TCPI, together with its subsidiaries, designs, develops, manufactures, and markets lamps, fixtures, and Internet-based lighting control solutions to the retail, commercial, and industrial customers worldwide. The Company offers various light emitting diode and compact fluorescent lamps and fixtures, as well as linear fluorescent lighting products and halogen lighting systems. The Company sells its products through retail outlets, including home centers and mass merchants; club, grocery, drug, and hardware stores under private label; and electrical distributors, catalog houses, and specialty lighting distributors.

3. TCPI was founded in 1993 and is headquartered in Cham, Switzerland. The Company's stock trades on the NYSE under the ticker symbol "TCPI."

4. Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) TCPI's Chairman, defendant Ellis Yan ("Yan"), had made improper payments with his personal funds relating to TCPI's business; (ii) improper relationships existed between Yan and the Company's Vice-Chairman, Zhaoling Yan, and certain vendors; and (iii) as a result of the foregoing, Defendants' statements about TCPI's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

5. On November 5, 2015, post-market, TCPI announced that it would delay the release of the Company's third-quarter financial results due to a pending investigation by the

Audit Committee of TCPI's Board of Directors (the "Audit Committee") concerning the scope and propriety of payments made by its Chairman with his personal funds relating to TCP's business, and whether relationships exist between Yan and Zhaoling Yan and certain vendors. TCPI also announced that it did not anticipate filing its third-quarter Form 10-Q by the extended due date of November 23, 2015.  TCPI further announced that the Audit Committee has retained independent legal and accounting advisors in connection with its investigation.

6.     On this news, the Company's stock fell $1.02, or more than 54%, to close at $1.20 on November 6, 2015.

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

10.    Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

11.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

12.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased TCPI common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.     Defendant TCPI is a Switzerland corporation with its principal executive offices located at Alte Steinhauserstrasse 1 Cham, 6330 Switzerland.  TCPI's stock trades on the NYSE under the ticker symbol "TCPI."

14.     Defendant Karel Robert den Daas ("den Daas") has served as the Company's Chief Executive Officer ("CEO") since July 2015.

15.     Defendant Yan served as the Company's CEO from the Company's founding in 1993 until July 2015 and has served at all relevant times as the Company's Chairman.

16.     Defendant Brian Catlett ("Catlett") has served at all relevant times as the Company's Chief Financial Officer.

17.     The defendants referenced above in ¶¶ 13-16 are sometimes collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

4

18.     TCPI, together with its subsidiaries, designs, develops, manufactures, and markets lamps, fixtures, and Internet-based lighting control solutions to the retail, commercial, and industrial customers worldwide. The Company offers various light emitting diode and compact fluorescent lamps and fixtures, as well as linear fluorescent lighting products and halogen lighting systems. The Company sells its products through retail outlets, including home centers and mass merchants; club, grocery, drug, and hardware stores under private label; and electrical distributors, catalog houses, and specialty lighting distributors.

19.     TCPI was founded in 1993 and is headquartered in Cham, Switzerland. The Company's stock trades on the NYSE under the ticker symbol "TCPI."

**Materially False and Misleading
Statements Issued During the Class Period**

20.     The Class Period begins on May 8, 2015, when TCPI filed a quarterly report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended March 31, 2015 (the "Q1 2015 10-Q").  For the quarter, the Company reported a net loss of $1.24 million, or zero per diluted share, on revenue of $98.78 million, compared to net income of $3.92 million, or $0.19 per diluted share, on revenue of $101.12 million for the same period in the prior year.

21.     In the Q1 2015 10-Q, TCPI stated, in part:

On April 15, 2015, Ellis Yan, the Company's Chief Executive Officer, entered into a Mutual Separation Agreement whereby he will not renew his employment agreement upon its expiration on June 30, 2015. Mr. Yan will remain a Director and continue to serve as Chairman of the Board of Directors. Under the terms of his Mutual Separation Agreement, Mr. Yan will receive severance comprised of continuing salary for three years. In addition, Mr. Yan is entitled to either continuation of medical, dental and health benefit plans or reimbursement of premiums for similar coverage. The Company expects to record severance expense of approximately $2,100 in the second quarter of 2015 following Mr. Yan's termination of employment, which will be paid over a 3-year period.

5

. . .

A material weakness is a deficiency, or combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of our annual or interim financial statements will not be prevented or detected and corrected on a timely basis. The following material weakness related to our control environment existed as of March 31, 2015:

- Our Chief Executive Officer's actions were inconsistent with setting an appropriate tone at the top by failing to adhere to the Company's established policies and procedures. Our Chief Executive Officer bypassed reporting lines established to enable the execution of authorities and responsibilities, which facilitate the flow of information to manage the activities of the Company and ensures that financial reporting matters could be adequately evaluated in a timely manner.

The control environment deficiency described above could have resulted in a failure to prevent or detect a material misstatement in our financial statements due to the omission of information or inappropriate conclusions regarding information required to be recorded, processed, summarized, and reported in the Company's SEC reports. Notwithstanding the identified material weakness, management believes the condensed consolidated financial statements included in this Quarterly Report on Form 10-Q fairly represent in all material respects our financial condition, results of operations and cash flows at and for the periods presented in accordance with U.S. GAAP.

### *Remediation*

To address the material weakness identified in our control environment, the Company is taking the following action to remediate the material weakness:

- Our Chief Executive Officer, Ellis Yan, agreed to not renew his employment agreement upon its expiration on June 30, 2015. As of such date, Mr. Yan will no longer be an executive, officer or employee of the Company or any of its subsidiaries, although he will remain a director of the Company and serve as its Chairman. Our board of directors is commencing a search for a Chief Executive Officer and expects to have a replacement by the end of 2015.

- Mr. Yan entered into an agreement with the Company in which he has agreed, through the date of termination of his service as an employee of the Company, to obtain the prior approval of the Company's board of directors before taking certain specified actions on behalf of the Company.

- We are conducting a thorough review of our organizational structure and the roles and responsibilities within each functional group, and are looking

to add executive resources within our operations and engineering departments and elsewhere, as appropriate, by the end of 2015.

- The Company has begun taking action to improve internal communication regarding its policies and procedures, and the dissemination of information among the various functional areas that are key to the accurate and timely preparation of SEC reports.

We plan to continue to review and make necessary changes to our internal control environment, as well as policies and procedures, to improve the overall effectiveness of internal control over financial reporting. Although we expect to complete our remediation plan during 2015, we cannot estimate how long it will take to complete the process or the costs of actions required. We will continue to assess the effectiveness of our remediation efforts in connection with our evaluation of our internal control over financial reporting. Prior to the completion of our remedial measures, there remains risk that the processes and procedures on which we currently rely will fail to be sufficiently effective, which could result in material misstatement of our financial position or results of operations and require a restatement.

22.     The Q1 2015 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by defendants Yan and Catlett, stating that the financial information contained in the Q1 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

23.     On August 7, 2015, TCPI filed a quarterly report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended June 30, 2015 (the "Q2 2015 10-Q").  For the quarter, the Company reported a net loss of $1.69 million, or $0.01 per diluted share, on revenue of $111.25 million, compared to net income of $1.95 million, or $0.01 per diluted share, on revenue of $112.46 million for the same period in the prior year.

24.     In the Q2 2015 10-Q, TCPI stated, in part:

A material weakness is a deficiency, or combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of our annual or interim financial statements will not be prevented or detected and corrected on a timely basis. The following material weakness related to our control environment existed as of June 30, 2015:

- Our former Chief Executive Officer [Yan's] actions were inconsistent with setting an appropriate tone at the top by failing to adhere to the Company's established policies and procedures. Our former Chief Executive Officer bypassed reporting lines established to enable the execution of authorities and responsibilities, which facilitate the flow of information to manage the activities of the Company and ensures that financial reporting matters could be adequately evaluated in a timely manner.

The control environment deficiency described above could have resulted in a failure to prevent or detect a material misstatement in our financial statements due to the omission of information or inappropriate conclusions regarding information required to be recorded, processed, summarized, and reported in the Company's SEC reports. Notwithstanding the identified material weakness, management believes the condensed consolidated financial statements included in this Quarterly Report on Form 10-Q fairly represent in all material respects our financial condition, results of operations and cash flows at and for the periods presented in accordance with U.S. GAAP.

### *Remediation*
To address the material weakness identified in our control environment, the Company is taking the following action to remediate the material weakness:

- Our former Chief Executive Officer, Ellis Yan, did not renew his employment agreement upon its expiration on June 30, 2015. On June 30, 2015, our Board of Directors appointed K.R. "Kaj" den Daas as the Company's new Chief Executive Officer, replacing Ellis Yan. Mr. Yan remains Chairman of the Company's Board of Directors and will support Mr. den Daas as he transitions into his new role.

- Mr. Yan entered into an agreement with the Company in which he agreed, through the date of termination of his service as an employee of the Company, to obtain the prior approval of the Company's board of directors before taking certain specified actions on behalf of the Company.

- We are conducting a thorough review of our organizational structure and the roles and responsibilities within each functional group, and are looking to add executive resources within our operations and engineering departments and elsewhere, as appropriate, by the end of 2015.

- The Company is taking action to improve internal communication regarding its policies and procedures and the dissemination of information among the various functional areas that are key to the accurate and timely preparation of SEC reports.

25.     The Q2 2015 10-Q contained signed certifications pursuant to SOX by defendants den Daas and Catlett, stating that the financial information contained in the Q2 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting

26.     The statements referenced in ¶¶ 20-25 were materially false and misleading because defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) TCPI's Chairman, defendant Yan, had made improper payments with his personal funds relating to TCPI's business; (ii) improper relationships existed between Yan and the Company's Vice-Chairman, Zhaoling Yan, and certain vendors; and (iii) as a result of the foregoing, Defendants' statements about TCPI's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

## The Truth Emerges

27.     On November 5, 2015, post-market, TCPI announced that it would delay the release of the Company's third-quarter financial results due to a pending investigation by the Company's Audit Committee concerning the scope and propriety of payments made by its Chairman with his personal funds relating to TCP's business, and whether relationships exist between Yan and Zhaoling Yan and certain vendors.  TCPI also announced that it did not anticipate filing its third-quarter Form 10-Q by the extended due date of November 23, 2015. TCPI further announced that the Audit Committee has retained independent legal and accounting advisors in connection with its investigation.

28.     On this news, the Company's stock fell $1.02, or more than 54%, to close at $1.20 on November 6, 2015.

29.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired TCPI securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.   Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

31.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, TCPI securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by TCPI or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

32.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

33.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

34.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of TCPI;

- whether the Individual Defendants caused TCPI to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of TCPI securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

35.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

36.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- TCPI securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold TCPI securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

37.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

38.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

12

39.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40.    This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

41.    During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of TCPI securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire TCPI securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

42.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for TCPI securities.  Such reports, filings, releases and statements were

materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about TCPI's finances and business prospects.

43.       By virtue of their positions at TCPI, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

44.       Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of TCPI securities from their personal portfolios.

45.       Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of TCPI, the Individual Defendants had knowledge of the details of TCPI's internal affairs.

46.       The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of TCPI. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to TCPI's businesses,

14

operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of TCPI securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning TCPI's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired TCPI securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

47.    During the Class Period, TCPI securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of TCPI securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of TCPI securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of TCPI securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

48.    By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

49.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

50.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51.     During the Class Period, the Individual Defendants participated in the operation and management of TCPI, and conducted and participated, directly and indirectly, in the conduct of TCPI's business affairs.  Because of their senior positions, they knew the adverse non-public information about TCPI's misstatement of income and expenses and false financial statements.

52.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to TCPI's financial condition and results of operations, and to correct promptly any public statements issued by TCPI which had become materially false or misleading.

53.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which TCPI disseminated in the marketplace during the Class Period concerning TCPI's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause TCPI to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of TCPI

within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of TCPI securities.

54. Each of the Individual Defendants, therefore, acted as a controlling person of TCPI. By reason of their senior management positions and/or being directors of TCPI, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, TCPI to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of TCPI and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

55. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by TCPI.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:   November 11, 2015

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Marc C. Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
Email:  ahood@pomlaw.com
Email:  mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**GOLDBERG LAW PC**
Michael Goldberg
Brian Schall
13650 Marina Pointe Dr. Ste. 1404
Marina Del Rey, California 90292
Telephone:  800-977-7401
Facsimile:  800-536-0065
Email:  michael@goldberglawpc.com
Email:  brian@goldberglawpc.com

***Attorneys for Plaintiff***

18