**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| ADELA BAI, on behalf of itself and all others similarly situated,<br><br>                Plaintiff,<br><br>     v.<br><br>TCP INTERNATIONAL HOLDINGS LTD., KAREL ROBERT DEN DAAS, ELLIS YAN, and BRIAN CATLETT<br><br>                Defendants. | Case No. 1: 16-cv-00102<br><br>Judge Donald C. Nugent |

**MEMORANDUM OF LAW IN SUPPORT OF**
**LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL**
**OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    ARGUMENT ................................................................................................ 3

    A.    The Standards For Judicial Approval Of Class Action Settlements ...................... 3

    B.    A Review Of The Sixth Circuit Factors Establishes That The
Settlement Should Be Approved ................................................................ 5

        1.    The Likelihood Of Success On The Merits Balanced
Against The Relief Offered In Settlement ................................... 5

        2.    The Complexity, Expense, And Likely Duration Of The
Litigation Supports The Settlement ........................................... 9

        3.    The Stage Of The Proceedings And Amount Of Discovery
Completed Support The Settlement ........................................... 10

        4.    The Absence Of Collusion, Arms'-Length Nature Of The
Settlement Negotiations, And Judgment Of Counsel
Support The Settlement ........................................................... 11

        5.    The Reaction Of The Settlement Class ...................................... 12

        6.    The Public Interest Favors The Settlement ................................ 14

    C.    The Plan Of Allocation Is Fair, Reasonable, And Adequate ............................... 14

    D.    Notice To The Settlement Class Satisfied The Requirements Of
Rule 23, Due Process, And The PSLRA ....................................................... 16

    E.    Certification Of The Settlement Class Remains Warranted ................................ 18

III.    CONCLUSION ............................................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aranda v. Carribean Cruise Line, Inc.*,
   No. 12 C 4069, 2017 WL 818854 (N.D. Ill. Mar. 2, 2017) ..................................... 12

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985)......................................................................................... 14

*Bert v. AK Steel Corp.*,
   No. 1:02-cv-467, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ............................ 11

*Brotherton v. Cleveland*,
   141 F. Supp. 2d 894 (S.D. Ohio 2001) ................................................................. 12

*Carson v. Am. Brands, Inc.*,
   *450 U.S. 79 (1981)* ............................................................................................ 5

*Chamberlain v. Reddy Ice Holdings, Inc.*,
   757 F. Supp. 2d 683 (E.D. Mich. 2010)................................................................. 6

*Chavarria v. N.Y. Airport Serv., LLC*,
   875 F. Supp. 2d 164 (E.D.N.Y. 2012) .................................................................. 8

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)............................................................................. 7, 8

*Dura Pharms.*, Inc. v. Broudo,
   544 U.S. 336 (2005)........................................................................................... 6

*Fidel v. Farley*,
   534 F.3d 508 (6th Cir. 2008) .............................................................................. 18

*Frank v. Dana Corp.*,
   646 F.3d 954 (6th Cir. 2011) ............................................................................... 6

*Granada Invs., Inc. v. DWG Corp.*,
   962 F.2d 1203 (6th Cir. 1992) ............................................................................. 3

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
   212 F.R.D. 400 (E.D. Wis. 2002) ............................................................. 15, 16, 17

*Griffin v. Flagstar Bancorp, Inc.*,
   No. 10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ......................... 14

*In re Am. Banknote Holographics, Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)................................................................... 15

*In re Art Materials Antitrust Litig.*,
   100 F.R.D. 367 (N.D. Ohio 1983) ........................................................... 12, 13, 17

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
　909 F. Supp. 2d 259 (S.D.N.Y. 2012) ..................................................................... 7

*In re Cardizem CD Antitrust Litig.*,
　218 F.R.D. 508 (E.D. Mich. 2003) ................................................................... 4, 15

*In re* Cendant Corp. Sec. Litig.,
　264 F.3d 201 (3d Cir. 2001) ................................................................................... 7

*In re Delphi Corp. Sec., Derivative &* ERISA Litig.,
　248 F.R.D. 483 (E.D. Mich. 2008) ......................................................................... 3

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
　194 F.R.D. 166 ..................................................................................................... 15

*In re Inter–Op Hip Prosthesis Liab. Litig.*,
　204 F.R.D. 330 (N.D. Ohio 2001) ........................................................................ 11

*In re Nationwide Fin. Servs. Litig.*,
　No. 08-cv-00249, 2009 WL 8747486 (S.D. Ohio Aug. 19, 2009) ................. 3, 10, 12

*In re Telectronics Pacing Sys., Inc.*,
　137 F. Supp. 2d 985 (S.D. Ohio 2001) ................................................. 4, 9, 10, 11

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*,
　497 F.3d 615 (6th Cir. 2007) ........................................................................ 3, 4, 5, 14

*IUE-CWA v. Gen. Motors Corp.*,
　238 F.R.D. 583 (E.D. Mich. 2006) ......................................................................... 4

*J.I. Case Co. v. Borak*,
　377 U.S. 426 (1964) ............................................................................................. 14

*Kogan v. AIMCO Fox Chase, L.P.*,
　193 F.R.D. 496 (E.D. Mich. 2000) ....................................................................... 10

*Leonhardt v. ArvinMeritor, Inc.*,
　581 F. Supp. 2d 818 (E.D. Mich. 2008) .............................................................. 3, 4

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
　688 F.2d 615 (9th Cir. 1982) .................................................................................. 4

*Ohio Pub. Interest Campaign v. Fisher Foods, Inc.*,
　546 F. Supp. 1 (N.D. Ohio 1982) ..................................................................... 7, 10

*Olden v. Gardner*,
　294 F. App'x 210 (6th Cir. 2008) ......................................................................... 12

*Sapp v. Experian Info. Sols., Inc.*,
　No. CIV.A. 10-4312, 2013 WL 2130956 (E.D. Pa. May 15, 2013) ...................... 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)...................................................................................... 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   *396 F.3d 96 (2d Cir. 2005)* .......................................................................... 13

**Regulations**

15 U.S.C. § 78u-4(a)(7) .................................................................................... 17

15 U.S.C. §§ 78j(b) and 78t(a)............................................................................ 5

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) .................................................................... 16, 17, 18

Rule 23 ........................................................................................................... 18

Rule 23(e) of the Federal Rules of Civil Procedure.................................... 1, 3

Rule 23(e)(1) ................................................................................................... 16

Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure ................. 18

**Statutes**

17 C.F.R. § 240.10b-5......................................................................................... 5

**Other Authorities**

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ................. 3

*Newberg on Class Actions* § 11.51 ................................................................. 11

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court-appointed Lead Plaintiff, the TCP International Investor Group ("TCPI Investor Group" or "Lead Plaintiffs"), on behalf of itself and the Settlement Class, respectfully submits this memorandum of law in support of its motion for final approval of the proposed Settlement resolving all claims asserted in this securities class action (the "Action") and for approval of the proposed plan of allocation of the proceeds of the Settlement (the "Plan of Allocation").[1]

## I.    **INTRODUCTION**

Subject to Court approval, the TCPI Investor Group has agreed to settle all claims in this Action in exchange for a cash payment of $1.1 million for the benefit of the Settlement Class.[2] The Settlement is the product of the TCPI Investor Group's extensive investigation concerning the claims asserted in the Action and vigorous prosecution of the litigation on behalf of the Settlement

---

[1] Unless otherwise noted, capitalized terms have the meanings ascribed to them in Stipulation and Agreement of Settlement with Individual Defendants dated July 20, 2017 (the "Stipulation") (ECF No. 71) or  the Joint Declaration of Leigh Handelman Smollar and Adam M. Apton in Support of: Motion for An Order Granting Final Approval of Class Action Settlement and Directing Dissemination of Notice to the Class and Motion in Support of Attorneys' Fees, Reimbursement of Expenses and Reimbursement Award to Lead Plaintiffs (the "Joint Declaration" or "Joint Decl.)," filed with this memorandum.  The Joint Declaration is an integral part of this submission, and for the sake of brevity, the Court is respectfully referred to it for a detailed description of, among other things: the history of the Action; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; and the terms of the Plan of Allocation for the Settlement proceeds.  All citations to "Joint Decl. ¶ __" and "Joint Decl. Ex. __" in this memorandum refer, respectively, to paragraphs in, and Exhibits to, the Joint Declaration.

[2] As preliminarily certified by the Court in the July 28, 2017 Order Preliminarily Approving Proposed Settlement with Individual Defendants and Providing for Notice (the "Preliminary Approval Order") (ECF No. 75), the "Settlement Class" consists of all persons and entities who or which purchased TCP International ("TCPI" or the "Company") common stock from May 9, 2015 through November 5, 2015, inclusive (the "Settlement Class Period") and were damaged thereby. Defendants and their certain related persons and entities are excluded from the definition of the Settlement Class. Also excluded are any persons and entities that exclude themselves by submitting a request for exclusion that is accepted by the Court as valid.

Class, including consultation with damages experts and mediation before an experienced and nationally-recognized mediator, former U.S. District Court Judge Wayne R. Andersen.

Based on Judge Andersen's involvement in the negotiations, review and analysis of the parties' mediation submissions and in-person presentations during the mediation, extensive communications with the parties, and assessment of the risks inherent in this litigation, Judge Andersen recommended the parties settle the claims for $1.1 million in cash, which the parties accepted. *See* Joint Decl. ¶4.

The terms of the Settlement are set forth in the Stipulation, ECF No. 71. In the Court's Preliminary Approval Order, the Court preliminarily approved the Settlement, certified the Settlement Class for purposes of the Settlement, and directed that notice be distributed to potential members of the Settlement Class. (*See* ECF. No. 75.) The $1.1 million Settlement Amount was fully funded into an escrow account for the benefit of the Settlement Class.

While Lead Plaintiffs and Co-Lead Counsel believe that the Settlement Class has strong claims, they recognize that they would have faced significant risks in establishing all the elements of their claims. Indeed, the issues of liability, loss causation, and damages were highly contested throughout the litigation, and would continue to be contested. The $1.1 million cash Settlement eliminates these risks and provides a certain, immediate and substantial cash recovery for the Settlement Class. In light of the obstacles to recovery, and the substantial time and expense that continued litigation would require, Lead Plaintiffs and Co-Lead Counsel believe that the Settlement is an excellent result for the Settlement Class, and warrants approval by the Court. *See* Declarations of Adela Bai, Michael Rivkind, and Roland Willis.

Lead Plaintiffs also request that the Court approve the proposed Plan of Allocation for the Settlement proceeds. The Plan of Allocation will govern how Settlement Class Members' claims

will be calculated and, ultimately, how money will be distributed to valid claimants.  The Plan of Allocation was prepared with the assistance of Lead Plaintiffs' damages expert and is based on the expert's analysis estimating the amount of artificial inflation in the prices of TCPI common stock during the Settlement Class Period.  Lead Plaintiffs submit that the Plan of Allocation is a fair and reasonable method for allocating the Settlement proceeds to eligible Settlement Class Members and also warrants the Court's approval.

## II.    ARGUMENT

### A.    The Standards For Judicial Approval Of Class Action Settlements

The settlement of complex class action litigation is favored by public policy and strongly encouraged by the courts.  The Sixth Circuit has recognized "the federal policy favoring settlement of class actions."  *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) [hereinafter *UAW*] (citation omitted),  "[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) [hereinafter *Newberg on Class Actions*].  Complex litigation, such as this, is "notoriously difficult and unpredictable."  *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992).

Pursuant to Rule 23(e), a court should approve a class action settlement if it is fair, reasonable, and adequate.  *See UAW*, 497 F.3d at 631; *In re Delphi Corp. Sec., Derivative & ERISA Litig.,* 248 F.R.D. 483, 496 (E.D. Mich. 2008).  "[W]hile courts have discretion in determining whether to approve a proposed settlement, they should be hesitant to engage in a trial on the merits or to substitute their judgment for that of the parties who negotiated the proposed settlement."  *In re Nationwide Fin. Servs. Litig.*, No. 08-cv-00249, 2009 WL 8747486, at *2 (S.D. Ohio Aug. 19, 2009) (citing *Leonhardt v. ArvinMeritor, Inc*., 581 F. Supp. 2d 818, 831 (E.D. Mich.

2008)). "Thus, in determining the reasonableness and adequacy of a proposed settlement, the Court should ascertain whether the settlement is within a 'range of reasonableness,' . . . and in the end, the Court's determinations are no more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Id.* (quoting *Leonhardt,* 581 F. Supp. 2d at 831 and *Officers for Justice v. Civil Serv. Comm'n of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982)).

To determine whether a proposed settlement meets the standard for final approval, courts in the Sixth Circuit look to the following factors: (1) the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (5) the nature of the negotiations and the risk of collusion; (6) the objections raised by the class members; and (7) the public interest. *See UAW*, 497 F.3d at 631; *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1009 (S.D. Ohio 2001); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003). While Sixth Circuit courts do not always articulate these factors using this language, the above list includes the factors commonly recognized as relevant. The Court, moreover, "may choose to consider only those factors that are relevant to the settlement and may weigh particular factors according to the demands of the case." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 594-95 (E.D. Mich. 2006). As discussed below, these factors strongly favor approval of the Settlement.

**B.    A Review Of The Sixth Circuit Factors Establishes That The Settlement Should Be Approved**

**1.    The Likelihood Of Success On The Merits Balanced Against The Relief Offered In Settlement**

A key factor that courts consider in assessing approval of a class action settlement is the plaintiff's likelihood of success on the merits, balanced against the relief offered in the settlement. *See UAW,* 497 F.3d at 631 (citing *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)).

Lead Plaintiffs' claims are brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5.  The TCPI Investor Group alleges that Defendants made numerous false and misleading statements and omitted material facts during the Settlement Class Period regarding the Defendants' improper payments and relationships with certain vendors.   Specifically, Lead Plaintiffs allege that throughout the Class Period Defendants made false and/or misleading statements, as well as failed to disclose that:  (i) TCPI's Chairman, Defendant Yan, had made improper payments with his personal funds relating to TCPI's business; (ii) improper relationships existed between Yan and the Company's Vice-Chairman, Solomon Yan, and certain vendors; and (iii) as a result of the foregoing, Defendants' statements about TCPI's business, operations, and prospects were false and misleading and/or lacked a reasonable basis. *See* Joint Decl. ¶10.)

Although the TCPI Investor Group and Co-Lead Counsel believe that the claims asserted in the Action are meritorious, continued litigation against Defendants poses significant risks that make any recovery uncertain.  If the case had not settled, Lead Plaintiffs would bear the burden of proving liability, loss causation, and damages. Each of these issues would be vigorously contested by Defendants, and the TCPI Investor Group would have no guarantee of success a trial.

5

As set forth in greater detail in the Joint Declaration, from the outset of this case, Defendants have challenged virtually every factual and legal issue in the litigation in an effort to defeat the Lead Plaintiffs' claims. Defendants would continue to press their defenses to liability at the motion to dismiss stage, summary judgment and trial.  For example, Defendants would continue to argue that TCPI's alleged failure to disclose Defendant Yan's improper payments and purportedly improper relationships with certain vendors were immaterial as a matter of law. If these arguments were successful, the TCPI Investor Group would not be able to carry its burden of proof on the materiality element of its claim.  Also, Defendants would continue to argue that TCPI's alleged omissions regarding improper payments and relationships did not render any of any TCPI's statements pertaining to its business operations and prospects materially false or misleading. Accordingly, Lead Plaintiffs faced a significant hurdle in proving that Defendants made misstatements of material fact that were actionable under the federal securities laws.

Even assuming that Lead Plaintiffs prevailed at trial in proving liability, Defendants would argue that loss causation was not established.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345–46 (2005) (holding that plaintiffs bear burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'"); *Frank v. Dana Corp.*, 646 F.3d 954, 958 (6th Cir. 2011); *Chamberlain v. Reddy Ice Holdings, Inc.*, 757 F. Supp. 2d 683, 714 (E.D. Mich. 2010) ("[A] plaintiff must show that an economic loss occurred after the truth behind the misrepresentation or omission became known to the market.").  Defendants would contend that Lead Plaintiffs could not prove that the alleged misstatements at issue caused the stock drop from November 5 to November 6, 2015. Specifically, Defendants would point to the fact that the other contemporaneous disclosures contained in the Company's 8-K filed with the SEC on November 5, 2015 – including the revelation that the Company's revenues had decreased

as a result of dwindled demand for CFL and LED products – suggest that TCPI's stock price during the Settlement Class Period was driven down for reasons other than the disclosure that the Company would delay announcing its third-quarter results. The presence of confounding information created additional risk because the jury would have to decide this issue based on expert testimony. "When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured." *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012); *see also In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe."). Furthermore, Defendants would argue that Lead Plaintiffs were incapable of carrying its burden of proof on damages in a manner compliant with the strictures of *Daubert.*

Had any of Defendants' arguments been accepted in whole or part, it could have eliminated or, at minimum, dramatically limited any potential recovery for the Settlement Class. Further, Lead Plaintiffs would have had to prevail at several stages – motion to dismiss, summary judgment, trial, and if it prevailed, on the appeals that were likely to follow. The Settlement eliminates the substantial litigation risks and guarantees the Settlement Class a substantial and immediate cash recovery of $1.1 million, as opposed to the risk of potentially no recovery after further litigation, trial, and exhausting appellate rights.

Finally, in evaluating a proposed settlement, some courts consider "the range of reasonableness of the settlement fund in light of the best possible recovery." *See Ohio Pub. Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 7 (N.D. Ohio 1982) (quoting factors outlined by Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)). The courts recognize, however, that "[t]he determination of a reasonable settlement 'is not susceptible

of a mathematical equation yielding a particularized sum,' but turns on whether the settlement falls within a range of reasonableness." *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 174 (E.D.N.Y. 2012) (quotation omitted). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455. "In fact, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Chavarria*, 875 F. Supp. 2d at 175 (citation omitted).

The proposed Settlement here is well within the range of reasonableness in light of the best possible recovery and the substantial risks presented by this litigation. Lead Plaintiffs' damages expert has estimated that the maximum amount of damages recoverable at trial, in the aggregate, if Lead Plaintiffs had prevailed on all claims, is $2.2 million. Under that scenario, the $1.1 million settlement represents 50% of the maximum damages. This is an excellent recovery for the Settlement Class given the risks inherent in this litigation.[3]  Had Lead Plaintiffs overcome all the obstacles noted above to proving liability and loss causation, there would still have been a strong possibility, if not probability, that Defendants could successfully challenge Lead Plaintiffs' damages theories for the relevant stock drop during the Settlement Class Period.  Based on Defendants' many credible challenges to Lead Plaintiffs' damages theories and based on discussions with their damages expert, it was possible that the damages could be significantly

---

[3] According to a 2017 report by NERA Economic Consulting, the "median of settlement value as a percentage of [ ] investor losses" was 18.4% for cases with investor losses less than $20 million. *See* Joint Decl., Ex. B at 36, Fig. 29. Additionally, according to a 2017 report by Cornerstone Research, in securities class actions where estimated damages were less than $50 million, the median recovery was only 7.3% of estimated damages. *See* Joint Decl., Ex. C at 8, Fig. 7.

reduced and would, at best, be subject to an unpredictable "battle of the experts" at trial.  In contrast with those risks the $1.1 million recovery represents a substantial and excellent benefit that is far more than "reasonable."

### 2. The Complexity, Expense, And Likely Duration Of The Litigation Supports The Settlement

The complexity, expense, and likely duration of the litigation is another factor considered in determining the fairness of a settlement.  *See Telectronics,* 137 F. Supp. 2d at 1013.  The securities claims asserted in this Action are extremely complex, and as discussed herein, would have required substantial expert discovery.  Moreover, achieving a litigated verdict in the Action would have required substantial additional time and expense.  In the absence of the Settlement, the continued litigation of the Action would have required motion to dismiss briefing, additional extensive fact discovery, including interrogatories, depositions, and the production of additional documents; substantial expert discovery on complicated loss causation issues and damages; motion practice pertaining to fact and expert discovery; a litigated motion for class certification; a likely motion for summary judgment; pre-trial evidentiary motions, including concerning the admissibility of expert testimony; a trial; and post-trial motion practice.  Finally, whatever the outcome at trial, it is virtually certain that appeals would be taken from any verdict.  The foregoing would pose substantial expense for the Settlement Class and delay the Settlement Class's ability to recover – assuming, of course, that the TCPI Investor Group and the Settlement Class were ultimately successful on their claims.

In contrast to costly, lengthy and uncertain litigation, the Settlement provides an immediate, significant, and certain recovery of $1.1 million for members of the Settlement Class.  Accordingly, this factor supports approval of the Settlement.

### 3.     The Stage Of The Proceedings And Amount Of Discovery Completed Support The Settlement

The stage of the proceedings and the extent of discovery completed is another factor that is considered in determining the fairness of a proposed settlement.  *See Telectronics*, 137 F. Supp. 2d at 1015; *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D. Mich. 2000).  Under this factor, the relevant inquiry is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement. *See Nationwide*, 2009 WL 8747486, at *5-6.  The parties need not have engaged in extensive discovery as long as they have engaged in sufficient investigation of the facts to enable an intelligent appraisal of the settlement.  *See id.* at *5 ("[A]lthough the parties were able to negotiate the Settlement at a relatively early stage of the proceedings, all of the parties had a 'clear view of the strengths and weaknesses of their cases.'" (quotation omitted)).

Here, the successful resolution of the Action has occurred after nearly two years of very hard-fought litigation. As set forth in greater detail in the Joint Declaration, Co-Lead Counsel had extensively developed the record by, among other things:

- Performing an in-depth review and analysis of (i) TCPI's public filings with the SEC; (ii) research reports by securities and financial analysts regarding TCPI; (iii) transcripts of TCPI's investor conference calls; (iii) press releases and media reports; (iv) economic analyses of the historical movement, pricing and trading data for publicly traded TCPI's common stock; (v) consultation with relevant experts; and (vi) other publicly available material and data (Joint  Decl. ¶61);

- Consulting with experts on issues such as loss causation, market efficiency and damages (*Id.*);

- Drafting a mediation statement, preparing for and participating in the mediation process, including a full-day mediation session held before former U.S. District Court Judge Wayne Andersen (*Id.*); and

- Negotiating and drafting the Stipulation and exhibits thereto, as well as the motion for preliminary approval of the Settlement (*Id.*).

Thus, at the time the Settlement was reached, Lead Plaintiffs and Co-Lead Counsel had obtained sufficient information to be able to intelligently assess the strengths and weaknesses of the case and appraise the merits of the Settlement. As a result, Lead Plaintiffs had a well-informed basis for their belief that the Settlement is a favorable resolution for the Settlement Class, and this factor supports approval of the Settlement.

### 4. The Absence Of Collusion, Arms'-Length Nature Of The Settlement Negotiations, And Judgment Of Counsel Support The Settlement

Additional factors the Sixth Circuit has directed courts to consider in evaluating class action settlements are whether the settlement is the product of arm's-length negotiations, the risk of collusion, and the judgment of experienced counsel. Without evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreements were reached without collusion. *See Telectronics*, 137 F. Supp. 2d at 1016 (citing, among other sources, *Newberg on Class Actions* § 11.51 ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.")).

Here, Lead Plaintiffs are represented by counsel with extensive experience litigating these types of claims; the Settlement was the result of intense, arm's-length negotiations; and the parties understood the strengths and weaknesses of the claims and defenses before the Settlement was reached. (*See* Firm Biographies, attached to the Declarations of Leigh Handelman Smollar and Adam M. Apton as Exhibits A, respectively.) Co-Lead Counsel's opinion that the proposed settlement is fair to the Settlement Class "is entitled to considerable weight." *Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 WL 4693747, at *3 (S.D. Ohio Oct. 23, 2008); *In re Inter–Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 351 (N.D. Ohio 2001) (recognizing that when a

11

"settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair").

Judge Andersen, an experienced mediator who oversaw the mediation and made the Mediator's Recommendation to settle the Action for $1.1 million. The participation of an independent mediator, such as Judge Andersen, in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties. *Aranda v. Carribbean Cruise Line, Inc.*, No. 12 C 4069, 2017 WL 818854, at *4 (N.D. Ill. Mar. 2, 2017) (noting that the opinion of the competent counsel, who negotiated the settlement with defendants at arms-length, and with the assistance of an experienced and respected mediator [Judge Andersen], favors approval of the proposed settlement); *Sapp v. Experian Info. Sols., Inc.*, No. CIV.A. 10-4312, 2013 WL 2130956, at *2 (E.D. Pa. May 15, 2013) (approving settlement and noting that "[t]here is no question but that the settlement was a result of hard-fought, arm's-length negotiation produced through the good offices of a highly-experienced former District Court Judge, Wayne Andersen, who in the end made this excellent result for the class possible"). This factor – arm's-length negotiation of a settlement crafted by an experienced and respected mediator – weighs in favor of approval.

## 5. The Reaction Of The Settlement Class

"In considering a class action settlement, the Court should also look to the reaction of the class members." *Nationwide,* 2009 WL 8747486, at *7 (citing *Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008). "The lack of significant objections is powerful evidence of the fairness of a proposed settlement." *Id.* (citing *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001)) ("[A] relatively small number of class members who object is an indication of a settlement's fairness.")); *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 372 (N.D. Ohio 1983)

(noting that overwhelming approval of proposed settlement by class members "is entitled to nearly dispositive weight in this court's evaluation of the proposed settlements")).

In accordance with the Preliminary Approval Order (ECF No. 75), the Court-appointed Claims Administrator, Strategic Claims Services ("Strategic"), began mailing copies of the postcard notice (the "Notice") to potential Settlement Class Members and their nominees on August 28, 2017.  *See* Declaration of Sarah Evans (the "Evans Decl."), ¶4.  As of December 15, 2017, Strategic has disseminated a total of 1,476 Postcard Notices to potential members of the Settlement Class and nominees. (*Id.* ¶6.)  In addition, the Summary Notice was transmitted over *PR Newswire* on September 15, 2017, *Globe Newswire* on August 8, September 5 and 19, 2017 and *AccessWire* on September 12, 22, 27 and 29, 2017 and the Notice and related settlement documents are available on the website specifically created for the Settlement.  (*Id.* ¶¶8, 9.)

The Notice contains, among other things, a description of the Action and the Settlement, and information about Settlement Class Members' rights to: (i) participate in the Settlement by submitting a Claim Form, (ii) object to the Settlement, the Plan of Allocation, or Co-Lead Counsel's motion for attorneys' fees and expenses, or (iii) exclude themselves from the Settlement Class.  While the deadline set by the Court for members of the Settlement Class to object to the Settlement or exclude themselves from the Settlement Class has not yet passed, to date, there have been no objections or requests for exclusion received. Evans Decl. at ¶¶11, 12. Thus, the Settlement Class's reaction to date also supports approving the Settlement.  *See Wal-Mart Stores,*

*Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").[4]

### 6.   The Public Interest Favors The Settlement

The Supreme Court has emphasized that private securities actions, such as the instant Action, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964))).

Here, the Settlement furthers that public policy by providing a substantial recovery to a large Settlement Class of shareholders. *See UAW*, 497 F.3d at 632 (recognizing "the federal policy favoring settlement of class actions" (citation omitted)).  Moreover, the Settlement promotes judicial efficiency.  It resolves at once the claims of the entire Settlement Class of aggrieved shareholders, and ends this protracted and contentious litigation, avoiding further years of litigation in this Court or in the Court of Appeals.

### C.   The Plan Of Allocation Is Fair, Reasonable, And Adequate

"Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole; the distribution plan must be fair, reasonable and adequate." *Griffin v. Flagstar Bancorp, Inc.*, No. 10-cv-10610, 2013

---

[4] The deadline for submitting objections and requesting exclusion is January 12, 2018. As provided in the Preliminary Approval Order, Co-Lead Counsel will file reply papers on or before January 23, 2018 that will address the requests for exclusion as well as any objections received. *See* ECF No. 75.

WL 6511860, at *7 (E.D. Mich. Dec. 12, 2013) (quoting *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 11.1 (E.D. Pa. 2000)); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 531 (E.D. Mich. 2003) (approving plan as fair and reasonable that adopted *pro rata* method for calculating each class member's share of settlement fund). "An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *In re Am. Banknote Holographics, Inc.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002).

The Plan of Allocation proposed by Lead Plaintiffs is referenced in the Notice made available on the Settlement website. *See* Notice, attached as Ex. A to the Evans Decl. Co-Lead Counsel developed the Plan of Allocation in consultation with Lead Plaintiffs' damages expert with the objective of equitably distributing the Net Settlement Fund to those Settlement Class Members who suffered economic losses as a result of the alleged securities law violations asserted in the Action. The damages expert developed the Plan of Allocation based on an analysis of damages, which determined how much artificial inflation was in the price of TCPI's common stock on each day during the Settlement Class Period as a result of Defendants' alleged materially false and misleading statements and omissions, and how much the stock price declined as a result of the disclosures that corrected the alleged misstatements and omissions. In calculating this estimated alleged artificial inflation, the damages expert considered price changes in TCPI's common stock in reaction to the alleged corrective disclosures, adjusting for price changes attributable to market or industry forces. Joint Decl. ¶¶56, 57.

Under the Plan of Allocation, a "Recognized Loss Amount" will be calculated for each purchase of TCPI's common stock during the Settlement Class Period. *See id.* ¶57. In general,

the Recognized Loss Amount will be the difference between the estimated artificial inflation on the purchase date and the estimated artificial inflation on the sale date, or the difference between the actual purchase price and the sales price, whichever is less.  *See id.* Accordingly, any shares purchased during the Settlement Class Period that were not held over a corrective disclosure will have no Recognized Loss Amount because the level of alleged artificial inflation is the same on the date of purchase and on the date of sale.  *See id.* Under the Plan of Allocation, the sum of a Claimant's Recognized Loss Amounts will be the Claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.  *See id.*

Co-Lead Counsel believes that the proposed Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Settlement Class Members who suffered losses as result of the conduct alleged in the Action.  Joint Decl. ¶56, 57. Moreover, as of December 15, 2017, 1,476 copies of the Notice, which contains a link to the Settlement website where the Plan of Allocation is provided, have been sent to potential Settlement Class Members and their nominees. *See* Evans Decl. ¶6.  To date, no objections to the proposed Plan of Allocation have been received.  Evans Decl. ¶¶11, 12.

### D. Notice To The Settlement Class Satisfied The Requirements Of Rule 23, Due Process, And The PSLRA

The Notice provided to the Settlement Class satisfied the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The Notice also satisfied Rule 23(e)(1), which requires that notice of a settlement be "reasonable."  Fed. R. Civ. P. 23(e)(1).

Both the Notice's substance and the method of its dissemination to potential Settlement Class Members satisfied these standards. The Notice contains the information required by Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7), including: (i) an explanation of the nature of the Action and the claims asserted; (ii) the definition of the Settlement Class; (iii) a description of the basic terms of the Settlement, (iv) a statement indicating the attorneys' fees and expenses that will be sought and; (v) a description of Settlement Class Members' right to request exclusion from the Settlement Class or to object to the Settlement, the Plan of Allocation, or the requested attorneys' fees or expenses. The Notice also provides recipients with information on how to submit a Claim Form in order to be potentially eligible to receive a distribution from the Net Settlement Fund.

As noted above, in accordance with the Preliminary Approval Order, as of December 15, 2017, the claims administrator has mailed 1,476 copies of the Notice by First-Class Mail to potential Settlement Class Members and nominees. *See* Evans Decl. ¶6. The claims administrator also caused the Summary Notice to be published over *PR Newswire* on September 15, 2017, *Globe Newswire* on August 8, September 5 and 19, 2017 and *AccessWire* on September 12, 22, 27 and 29, 2017. (*Id.* ¶¶8, 9.) In addition, Strategic has established a website dedicated to the Settlement, http://www.strategicclaims.net/tcp-intl-litigation/, to provide potential Settlement Class Members with information about the Settlement and the applicable deadlines, as well as access to downloadable copies of the Notice (including the Plan of Allocation), Claim Form, and Stipulation of Settlement. *Id.* ¶5.

This combination of individual mail to all members of the Settlement Class who could be identified with reasonable effort, supplemented by notice in appropriate, widely-circulated publications, and set forth on an Internet website, was "the best notice . . . practicable under the

circumstances" and satisfies the requirements of due process, Rule 23, and the PSLRA.  Fed. R. Civ. P. 23(c)(2)(B); *see Fidel v. Farley,* 534 F.3d 508, 513 (6th Cir. 2008) (confirming that similar notice program comported with due process and Fed. R. Civ. P. 23).

**E.  Certification Of The Settlement Class Remains Warranted**

The Court's July 28, 2017 Preliminary Approval Order granted TCPI Investor Group's motion for preliminary approval of the Settlement and preliminarily certified the Settlement Class for Settlement purposes only, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  (ECF No. 75).  Nothing has changed to alter the propriety of certification for Settlement purposes and, for all the reasons stated in TCPI Investor Group's Preliminary Approval Brief (ECF No. 73), TCPI Investor Group respectfully requests that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class pursuant to Rules 23(a) and (b)(3).

**III.  CONCLUSION**

For all the forgoing reasons, Lead Plaintiffs respectfully request that the Court grant its motion in its entirety.

Dated: December 22, 2017                              Respectfully submitted,

                                                     s/ Adam M. Apton
                                                     Nicholas I. Porritt
                                                     Adam M. Apton
                                                     Levi & Korsinsky LLP
                                                     1101 30th Street N.W., Suite 115
                                                     Washington, D.C. 20003
                                                     Telephone: (202) 524-4290

                                                     Leigh Handelman Smollar
                                                     Patrick v. Dahlstrom
                                                     Omar Jafri
                                                     POMERANTZ LLP
                                                     10 South LaSalle Street, Ste. 3505
                                                     Chicago, IL 60603

(312) 377-1181

*Counsel for Lead Plaintiff TCP*
*International Investor Group*
*and Co-Lead Counsel for the Class*