## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DISTRICT

| | |
|---|---|
| ADELA BAI, on behalf of itself and all others similarly situated,<br><br>          Plaintiff,<br><br>    v.<br><br>TCP INTERNATIONAL HOLDINGS LTD., KAREL ROBERT DEN DAAS, ELLIS YAN, and BRIAN CATLETT,<br><br>          Defendants. | Case No. 1: 16-cv-00102<br><br>Judge Donald C. Nugent |

## MEMORANDUM OF LAW IN SUPPORT OF
## CO-LEAD COUNSEL'S MOTION FOR AN AWARD OF
## <u>ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES</u>

## **TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ........................................................................ 1

II.  FACTUAL AND PROCEDURAL HISTORY ................................................. 3

III.  ARGUMENT ..................................................................................................... 3

A.  Plaintiff's Counsel Are Entitled To A Reasonable Award Of
Attorneys' Fees From The Common Fund ............................................ 3

B.  The Court Should Award A Reasonable Percentage Of The
Common Fund ........................................................................................... 4

C.  The Requested Attorneys' Fees Are Reasonable Under The
Percentage-Of-The Fund Method ......................................................... 5

D.  A Review Of The Sixth Circuit Factors Confirms That The
Requested 30% Fee Is Fair And Reasonable ....................................... 8

1.  The Value Of The Benefit Rendered To The Settlement
Class Supports The Requested Fee ............................................ 9

2.  The Value Of The Services On An Hourly Basis, And  A
Lodestar Cross-Check, Supports The Requested Fee .............. 12

3.  Society's Stake In Rewarding Attorneys Who Enforce The
Securities Laws Supports The Requested Fee .......................... 14

4.  The Contingent Nature Of The Representation Supports
The Requested Fee ...................................................................... 16

5.  Complexity Of The Litigation Supports The Requested Fee ................... 16

6.  The Professional Skill And Standing Of Counsel Supports
The Requested Fee ...................................................................... 18

E.  Plaintiff's Counsel's Expenses Are Reasonable And Were
Necessarily Incurred To Achieve The Benefit Obtained ..................... 19

F.  Lead Plaintiffs Should Be Awarded Their Reasonable Costs Under
The PSLRA ................................................................................................ 21

IV.  CONCLUSION ................................................................................................. 22

## **TABLE OF AUTHORITIES**

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,

    572 F.3d 221 (5th Cir. 2009) ................................................. 17

*Anixter v. Home-Stake Prods. Co.*,

    77 F.3d 1215 (10th Cir. 1996) ............................................. 11

*Backman v. Polaroid Corp.*,

    910 F.2d 10 (1st Cir. 1990)................................................... 11

*Bailey v. AK Steel Corp.*,

    No. 1:06-CV-468, 2008 WL 553764 (S.D. Ohio Feb. 28, 2008) ........................... 14

*Barnes v. City of Cincinnati*,

    401 F.3d 729 (6th Cir. 2005) ................................................. 12

*Basic Inc. v. Levinson*,

    485 U.S. 224 (1988)................................................................. 15

*Bessey v. Packerland Plainwell, Inc.*,

    No. 4:06-cv-95, 2007 WL 3173972 (W.D. Mich. Oct. 26, 2007) ........................... 6

*Boeing Co. v. Van Germert*,

    *444 U.S. 472 (1980)* ................................................................. 3

*Bowling v. Pfizer, Inc.*,

    922 F. Supp. 1261 (S.D. Ohio 1996) ....................................... 14

*Brotherton v. Cleveland*,

    141 F. Supp. 2d 907 (S.D. Ohio 2001) ..................................... 6

*Chamberlain v. Reddy Ice Holdings, Inc.*,

    757 F. Supp. 2d 683 (E.D. Mich. 2010).................................. 10

*City of Providence v. Aeropostale, Inc.*,

    No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014).......................... 17

*Dura Pharms.*, Inc. v. Broudo,

   544 U.S. 336 (2005)................................................................................... 10

*Eltman v. Grandma Lee's, Inc.*,

   No. 82 Civ. 1912, 1986 WL 53400 (E.D.N.Y. May 28, 1986).................................. 15

*Fogarazzo v. Lehman Bros., Inc.*,

   No. 03-cv-5194 (SAS), 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ...................................... 16

*Glickenhaus & Co. v. Household Int'l, Inc.*,

   787 F.3d 408 (7th Cir. 2015) ........................................................................... 11

*Goldberger v. Integrated Res., Inc.*,

   209 F.3d 43 (2d Cir. 2000)................................................................................... 13

*Hensley v. Eckerhart,*

   461 U.S. 424 (1983)........................................................................................ 9

*High-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM),

   2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ........................................................ 5

*Hubbard v. BankAtlantic Bancorp, Inc.*,

   688 F.3d 713 (11th Cir. 2012) ........................................................................... 11

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,

   No. MDL 1500, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)....................................... 17

*In re Apple Computer Sec. Litig.*,

   No. C-84-20148, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) .................................. 11

*In re BankAtlantic Bancorp, Inc.*,

   No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)........................... 11

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,

   909 F. Supp. 2d 259 (S.D.N.Y. 2012)................................................................... 10

*In re Cardinal Health Inc. Sec. Litig.*,

   528 F. Supp. 2d 752 (S.D. Ohio 2007) ...................................................... 5, 12, 14

iii

*In re Cardizem CD Antitrust Litig.*,

    *218 F.R.D. 508 (E.D. Mich. 2003)*................................................................. 3, 4, 5, 6

*In re Cendant Corp. Litig.*,

    264 F.3d 201 (3d Cir. 2001)................................................................. 10, 19

*In re CMS Energy Sec. Litig.*,

    No. 02-cv-72004, 2007 WL 9611274 (E.D. Mich. Sept. 6, 2007) ....................................... 6, 14

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,

    248 F.R.D. 483 (E.D. Mich. 2008) ................................................................. passim

*In re DPL Inc. Sec. Litig.*,

    307 F. Supp. 2d 947 (S.D. Ohio 2004) ................................................................. 7, 9

*In re F & M Distribs., Inc*. Sec. Litig.,

    No. 95-CV-71778-DT, 1999 WL 35771208 (E.D. Mich. June 29, 1999)................................. 19

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,

    No. 02-CV-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)......................... 14

*In re Global Crossing Sec. & ERISA Litig.*,

    225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................. 19, 20, 21

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,

    *246 F.R.D. 156 (S.D.N.Y. 2007)* ................................................................. 17

*In re Packaged Ice Antitrust Litig.*,

    No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ......................... 4, 5, 6, 12

*In re Polyurethane Foam Antitrust Litig.*,

    No. 1:10 MD 2196, 2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) ......................... 6

*In re Rite Aid Corp. Sec. Litig.*,

    396 F.3d 294 (3d Cir. 2005)................................................................. 13

*In re Se. Milk Antitrust Litig.*, No. 2:07-CV 208,

    2013 WL 2155387 (E.D. Tenn. May 17, 2013)................................................................. passim

*In re Skelaxin (Metaxalone) Antitrust Litig.*,

    MDL No. 2343, 2014 WL 2946459 (E.D. Tenn. Jun. 30, 2014)........................................ 4, 5, 6

*In re Telectronics Pacing Sys., Inc.*,

    137 F. Supp. 2d 1029 (S.D. Ohio 2001) ................................................................ 15

*In re UnumProvident Corp. Derivative Litig.*,

    No. 1:02-CV-386, 2010 WL 289179 (E.D. Tenn. Jan. 20, 2010)................................ 13

*In re Viropharma Inc. Sec. Litig.*,

    No. 12-cv-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016)................................... 19

*In re WorldCom, Inc. Sec. Litig.*,

    388 F. Supp. 2d 319 (S.D.N.Y. 2005)........................................................... 13, 19

*In re Xcel Energy, Inc.*,

    364 F. Supp. 2d 980 (D. Minn. 2005)............................................................... 19

*Maher v. Zapata Corp.*,

    714 F.2d 436 (5th Cir. 1983) ...................................................................... 16

*Maley v. Del Global Techs. Corp.*,

    186 F. Supp. 2d 358 (S.D.N.Y. 2002).............................................................. 7

*Manners v. Am. Gen. Life Ins. Co.*,

    No. Civ.A. 3-98-0266, 1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999)............................. 14

*McHugh v. Olympia Entm't, Inc.*,

    37 Fed. Appx. 730 (6th Cir. 2002)............................................................... 13

*New England Health Care Empls. Pension Fund v. Fruit of the Loom, Inc.*,

    234 F.R.D. 627 (W.D. Ky. 2006)........................................................... passim

*Old CCA Sec. Litig./In re Prison Realty Sec. Litig.*, No. 3:99-458,

    2001 U.S. Dist. LEXIS 21942, at *3 (M.D. Tenn. Feb. 9, 2001) ................................. 6

*Ramey v. Cincinnati Enquirer, Inc.*,

    508 F.2d 1188 (6th Cir. 1974) ................................................................ 8, 15

*Rawlings v. Prudential-Bache Props., Inc.*,

    *9 F.3d 513 (6th Cir. 1993)* ................................................................. 3, 4, 5

*Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*,

    No. 10-CV-14360, 2015 WL 1498888 (E.D. Mich. Mar. 31, 2015) ......................... 4

*Stanley v. U.S. Steel Co.*,

    No. 04-74654, 2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) ................................ 16

*Swigart v. Fifth Third Bank*,

    No. 1:11-CV-88, 2014 WL 3447947 (S.D. Ohio July 11, 2014).......................... 5, 8

*Taft v. Ackermans*,

    No. 02-cv-7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)........................ 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

    551 U.S. 308 (2007)............................................................................ 15

*Thacker v. Chesapeake Appalachia, L.L.C.*,

    695 F. Supp. 2d 521 (E.D. Ky. 2010) .......................................................... 7

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,

    669 F.3d 632 (5th Cir. 2012) .................................................................... 5

*Walls v. JPMorgan Chase Bank, N.A.*,

    No. 3:11-CV-673-DJH, 2016 WL 6078297 (W.D. Ky. Oct. 14, 2016) ................... 14

*Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*,

    396 F.3d 96 (2d Cir. 2005)................................................................... 4, 7

*Worthington v. CDW Corp.*,

    No. C-1-03-649, 2006 WL 8411650 (S.D. Ohio May 22, 2006)............................. 6

**Statutes**

15 U.S.C. § 78u-1(a)(6) ............................................................................ 5

15 U.S.C. § 78u-4(a)(4) ........................................................................... 21

Court-appointed Co-Lead Counsel Pomerantz LLP ("Pomerantz") and Levi & Korsinsky LLP ("Levi & Kosinsky") (collectively, "Co-Lead Counsel") respectfully request that the Court grant their motion for an award of attorneys' fees in the amount of 30%[1] of the Settlement Fund, or $330,000 plus interest earned at the same rate as the Settlement Fund.[2]  Co-Lead Counsel also seek: (i) reimbursement of $32,911.11 in litigation expenses that Plaintiff's Counsel reasonably and necessarily incurred in prosecuting and resolving the Action, and (ii) awards of $5,000 for each Court-appointed Lead Plaintiff (collectively, the "TCPI Investor Group" or "Lead Plaintiffs") in connection with their representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## I.     PRELIMINARY STATEMENT

The proposed Settlement, which provides for a payment of $1.1 million in cash in exchange for the resolution of the Action, represents an extremely favorable result for the Settlement Class, particularly when juxtaposed against the significant procedural and substantive hurdles that TCPI Investor Group would have had to overcome in order to prevail in this complex securities fraud litigation. In undertaking this litigation, Co-Lead Counsel faced numerous challenges to establishing liability, loss causation and damages.  The risk of losing was very real, and it was greatly enhanced by the fact that Co-Lead Counsel would be litigating against a publicly traded corporate defendant, represented by highly skilled defense counsel, under the heightened pleading standard of the PSLRA.  There was, therefore, an exceptionally strong possibility that the case

---

[1] The Notice informed the Settlement Class that Co-Lead Counsel would apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Fund.

[2] Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated July 20, 2017 (the "Stipulation") (ECF No. 71) or in the Joint Declaration of Leigh Handelman Smollar and Adam M. Apton filed with this memorandum.

would yield little or no recovery after many years of costly litigation. Despite these risks, Plaintiff's Counsel collectively dedicated more than 550 hours of time to this litigation over the course of approximately two years. This work was performed on a fully contingent basis, and the only guarantees were that the case would be complex, costly and hard-fought, and that Plaintiff's Counsel would receive nothing if they lost.

Co-Lead Counsel believe that an attorney fee award of 30% properly reflects the many significant risks taken by Co-Lead Counsel, as well as the excellent result achieved in a hotly contested and difficult litigation. In fact, the settlement was such a great result that it recovers 50% of the total potential damages under Lead Plaintiffs' theory of liability.[3] When examined under either the percentage of the fund or lodestar methods for calculating attorneys' fees, it is clear the requested fee is reasonable, and well within the range of attorneys' fees awarded in similar complex, contingency cases. In addition, the costs and expenses requested by Co-Lead Counsel and the TCPI Investor Group are likewise reasonable in amount, and they were necessarily incurred in the successful prosecution of the Action. Accordingly, they too should be approved.

---

[3] According to a 2017 report by NERA Economic Consulting, the "median of settlement value as a percentage of [ ] investor losses" was 18.4% for cases with investor losses less than $20 million. *See* Joint Decl., Ex. B at 36, Fig. 29. Additionally, according to a 2017 report by Cornerstone Research, in securities class actions where estimated damages were less than $50 million, the median recovery was only 7.3% of estimated damages. *See* Joint Decl., Ex. C at 8, Fig. 7.

## II.  FACTUAL AND PROCEDURAL HISTORY

The Joint Declaration of Leigh Handelman Smollar and Adam M. Apton (the "Joint Declaration" or "Joint Decl.") is an integral part of this submission, and for the sake of brevity in this memorandum, the Court is respectfully referred to the Joint Declaration for a detailed description of, *inter alia*: the history of the Action; the efforts involved in the drafting of the complaints; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; and a description of the services Co-Lead Counsel provided for the benefit of the Settlement Class.[4]

## III.  ARGUMENT

### A.  Plaintiff's Counsel Are Entitled To A Reasonable Award Of Attorneys' Fees From The Common Fund

"It is well established that 'a lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole.'" *New England Health Care Empls. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 633 (W.D. Ky. 2006) (quoting *Boeing Co. v. Van Germert*, 444 U.S. 472, 478 (1980)).  In common fund cases, the Sixth Circuit has held that "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved."  *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).  The standard for an award of attorneys' fee in common fund cases in the Sixth Circuit is that they be "reasonable under the circumstances."  *Id.; see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 531 (E.D. Mich. 2003).

---

[4] All citations to "Joint Decl. ¶ __" and "Joint Decl. Ex. __" in this memorandum refer, respectively, to paragraphs in, and Exhibits to, the Joint Declaration.

**B.**     <u>The Court Should Award A Reasonable Percentage Of The Common Fund</u>

Although the Sixth Circuit has granted trial courts the discretion to utilize either the lodestar or the percentage-of-the-fund method when awarding attorney fees, *Rawlings*, 9 F.3d at 516, courts within the Sixth Circuit have recognized the clear trend "'toward adoption of a percentage of the fund method' in common fund cases." *In re Se. Milk Antitrust Litig.*, No. 2:07-CV 208, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013); *Cardizem*, 218 F.R.D. at 532 (courts in the Sixth Circuit have "indicated their preference for the percentage-of-the-fund method in common fund cases").  Courts in this Circuit prefer the percentage method of awarding attorneys' fees because it eliminates disputes about the reasonableness of rates and hours, conserves judicial resources, and aligns the interests of class counsel and the class members.  *See Rawlings*, 9 F.3d at 515; *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, No. 10-CV-14360, 2015 WL 1498888, at *15 (E.D. Mich. Mar. 31, 2015); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *16 (E.D. Mich. Dec. 13, 2011); *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 502 (E.D. Mich. 2008).  It also "more accurately reflects the result achieved" and "has the virtue of reducing the incentive for Plaintiff's attorneys to over-litigate or 'churn' cases." *In re Skelaxin (Metaxalone) Antitrust Litig.*, MDL No. 2343, 2014 WL 2946459, *1 (E.D. Tenn. Jun. 30, 2014) (citations omitted).  In other words, the percentage-of-the-fund method "'provides a powerful incentive for the efficient prosecution and early resolution of litigation.'"  *Se. Milk*, 2013 WL 2155387, at *2 (quoting *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005)).

Conversely, the lodestar method "has been criticized for being too time-consuming of scarce judicial resources," as it requires that courts "pore over time sheets, arrive at a reasonable hourly rate, and consider numerous factors in deciding whether to award a multiplier." *Rawlings*, 9 F.3d at 516-17.  "With the emphasis it places on the number of hours expended by counsel rather

4

than the results obtained, it also provides incentives for overbilling and the avoidance of early settlement." *Id*. at 517.

Based on these considerations, as well as others, district courts in this Circuit have virtually uniformly shifted to the percentage method in awarding fees in common fund cases. *See Skelaxin*, 2014 WL 2946459, at *1 ("The Court recognizes that the trend in '"common fund cases has been toward use of the percentage method."' (quotation omitted)); *Cardizem*, 218 F.R.D. at 532 (courts in the Sixth Circuit have "indicated their preference for the percentage-of-the-fund method in common fund cases"); *Delphi*, 248 F.R.D. at 502 (E.D. Mich. 2008); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 764 (S.D. Ohio 2007); *Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *17; *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *5 (S.D. Ohio July 11, 2014).

Finally, since this case is a securities class action, it is important to recognize that application of the percentage-of-the-fund method is consistent with the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. § 78u-1(a)(6). In fact, several courts have concluded that Congress, in using this language, expressed a preference for the percentage method when determining attorneys' fees in securities class actions. *See Delphi*, 248 F.R.D. at 502; *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012); *In re High-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *12 (S.D.N.Y. Dec. 19, 2014).

### C. The Requested Attorneys' Fees Are Reasonable Under The Percentage-Of-The Fund Method

Co-Lead Counsel's fee request of 30% of the Settlement Fund falls well within the range of fees awarded in the Sixth Circuit on a percentage basis in complex common fund cases. *See Se.*

*Milk*, 2013 WL 2155387, at *3 (finding that 33% "is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit"); *Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *19 ("the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions"); *Bessey v. Packerland Plainwell, Inc.*, No. 4:06-cv-95, 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007) (awarding 33% and noting that "[e]mpirical studies show that . . . fee awards in class actions average around one-third of recovery"); *Cardizem*, 218 F.R.D. at 532 (recognizing that fees in the 20–30% range are generally awarded in this Circuit); *Worthington v. CDW Corp.*, No. C-1-03-649, 2006 WL 8411650, at *6 (S.D. Ohio May 22, 2006) ("[C]ounsel's requested percentage of 38 and one-third of the total gross settlement is solidly within the typical 20 to 50 percent range"); *Fruit of the Loom*, 234 F.R.D. at 633 ("Fee awards in common fund cases typically range "from 20 to 50 percent of the common fund created.") (citing, among others, *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 910 (S.D. Ohio 2001)).

At 30%, the requested fee is consistent with the percentage fee awards granted in many other complex class actions within the Sixth Circuit and elsewhere. *See In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 1639269, at *7 (N.D. Ohio Feb. 26, 2015) (30% of $147.8 million); *In re Old CCA Sec. Litig./In re Prison Realty Sec. Litig.*, No. 3:99-458, 2001 U.S. Dist. LEXIS 21942, at *3 (M.D. Tenn. Feb. 9, 2001) (30% of $104 million); ; *Skelaxin*, 2014 WL 2946459, at *1 (awarding one-third of a $73 million settlement fund, finding that a "counsel fee of one-third is fair and reasonable and fully justified" and "within the range of fees ordinarily awarded"); *In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*, No. 2:09-2009 SMH, slip op. at 16-19 (W.D. Tenn. Aug. 5, 2013), ECF No. 364 (30% of $62 million); *Schuh v. HCA Holdings Inc.*, No. 3:11-cv-01033, slip op. at 1 (M.D. Tenn. Apr. 14, 2016), ECF No. 563 (30%

of $215 million); *Se. Milk*, 2013 WL 2155387, at *3 (award of 33% of $158.6 million settlement fund); *Morse v. McWhorter*, No. 3:97-0370, slip op. at 1 (M.D. Tenn. Mar. 12, 2004), ECF No. 244-18 (33.3% of $49.5 million.[5]

Moreover, courts have awarded fees of 30% or more where a settlement was reached during the pendency of a motion to dismiss or shortly after, and where no or very limited formal discovery had been obtained as a result of the PSLRA discovery stay. *See, e.g., In re L.G. Philips LCD Co. Sec. Litig.*, No. 1:07-cv-00909-RJS, slip op. at 1 (S.D.N.Y. Mar. 17, 2011), ECF No. 82 (awarding 30% of $18 million, representing a multiplier of 3.17, where settlement was reached while motion to dismiss was pending); *Taft v. Ackermans*, No. 02-cv-7951 (PKL), 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (awarding 30% of $15.2 million, representing a 1.44 multiplier, where settlement was reached while motion to dismiss was pending); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (awarding 33.3% of $11.5 million, representing a 4.65 multiplier, where settlement was reached while motions to dismiss were pending).   Indeed, courts recognize that one of the merits of awarding fees on a percentage basis is that it does not penalize attorneys for achieving a prompt resolution of a case where, as here, sufficient information about the value of the claims could be determined through investigation and careful analysis of the legal and factual issues, thus avoiding the need for costly and lengthy formal discovery.  *See Se. Milk*, 2013 WL 2155387, at *2 (quoting *Wal-Mart*, 396 F.3d at 121) (recognizing that the percentage

---

[5] *See also Winslow v. Bancorpsouth, Inc.*, No. 3:10-cv-00463, slip op. at 1 (M.D. Tenn. Oct. 31, 2012), ECF No. 103 (30% of $29.25 million); *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010), *aff'd* 636 F.3d 235 (6th Cir. 2011) (30% of $28.75 million); *In re Advanced Lighting Techs., Inc. Sec. Litig.*, 99CV836, slip op. at 1 (N.D. Ohio Jan. 17, 2003), ECF No. 138 (granting award of 30% of $8.84 million settlement); *In re Direct Gen. Corp. Sec. Litig.*, 3:05-0077, slip. op. at 1 (M.D. Tenn. July 20, 2007), ECF No. 290 (awarding 30% of $14.94 million settlement); *Beach v. Healthways Inc.,* No. 3:08-cv-00569, slip op. at 1 (M.D. Tenn. Sept. 27, 2010), ECF No. 252 (30% of $23.6 million).

method "provides a powerful incentive for the efficient prosecution and early resolution of litigation")).

This reasoning is particularly appropriate in this case, where Co-Lead Counsel:  (i) engaged in an extremely thorough investigation of the facts -- including reviewing and analyzing TCPI's Class Period and pre-Class Period public filings, annual reports, press releases, quarterly earnings call and investment conference transcripts, and other public statements;  (ii) collecting and reviewing a comprehensive compilation of reports, news articles, TCPI's filings with the United States Securities and Exchange Commission, and various other public records;  (iii) reviewing and analyzing stock trading data relating to TCPI;  (iv) consulting with an economic expert in the areas of loss causation, market efficiency, and damages and;  (v) preparing for and participating in a full-day mediation process with a nationally regarded third-party neutral, Hon. Wayne Andersen (Ret.), including mediation statements. As a result of this and other work, Co-Lead Counsel were able to negotiate the Settlement from a position of strength at a relatively early stage of the litigation.  Co-Lead Counsel respectfully submit that their efficient and effective litigation of this action should be rewarded -- not penalized.

## D.   A Review Of The Sixth Circuit Factors Confirms That The Requested 30% Fee Is Fair And Reasonable

In reviewing the reasonableness of the requested award, the Sixth Circuit requires district courts to consider six factors, known as the *Ramey* factors:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis [the lodestar cross-check]; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194-97 (6th Cir. 1974); *Swigart*, 2014 WL 3447947, at *6.  As demonstrated below, these factors strongly support an award of the requested

attorneys' fees.

**1.     The Value Of The Benefit Rendered To The Settlement Class Supports The Requested Fee**

Courts have consistently recognized that the result achieved is the primary factor to be considered in making a fee award. *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *see also Delphi,* 248 F.R.D. at 503; *In re DPL Inc., Sec. Litig.,* 307 F. Supp. 2d at 951.  Here, Co-Lead Counsel have secured a settlement that provides an immediate and certain benefit to the Settlement Class in the form of an $1.1 million cash payment, which is an excellent result in that it recovers 50% of the classes total potential damages. Yet, to fully appreciate the Settlement, it must be evaluated in light of the procedural and substantive hurdles that TCPI Investor Group would have had to overcome in order to prevail in this complex securities fraud litigation.

Throughout the litigation, and as discussed in great detail in the Joint Declaration, Defendants have consistently maintained that TCPI Investor Group could not establish liability or damages and challenged virtually every factual and legal issue in the litigation in an effort to defeat Lead Plaintiffs' claims.  Many of the risks presented by these arguments would continue to exist through, and after, trial.  For example, Defendants would argue, among other things, that TCPI Investor Group could not:  (i) prove an actionable misstatement; (ii) satisfy the rigorous standards for pleading scienter; and (iii) establish loss causation and damages.  (Joint Decl. ¶¶39-48.) Defendants would further argue, and eventually attempt to convince a jury, that there is no conclusion of fraud to be drawn in this case, and Defendants' alleged failure to disclose Yan's improper payments and Defendants' relationships with various vendors were immaterial as a matter of law.  If these arguments were successful, Lead Plaintiffs would not be able to carry its burden of proof on materiality element of its claim.

Even assuming that Lead Plaintiffs prevailed at trial in establishing material untrue statements and omissions that were made with scienter, Defendants would argue that loss causation could not be established. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345–46 (2005) (holding that plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'" (quotation omitted)); *Chamberlain v. Reddy Ice Holdings, Inc.*, 757 F. Supp. 2d 683, 714 (E.D. Mich. 2010) ("[A] plaintiff must show that an economic loss occurred after the truth behind the misrepresentation or omission became known to the market."). Defendants would contend that Lead Plaintiffs could not prove that the alleged misstatements at issue caused the stock drop from November 5 to November 6, 2015. Specifically, Defendants would point to the fact that the other contemporaneous disclosures contained in the Company's 8-K filed with the SEC on November 5, 2015, including the revelation that the Company's revenues had decreased as a result of decreased demand for CFL and LED products, suggest that TCPI's stock price during the Settlement Class Period was driven down for reasons other than the disclosure that the Company would delay announcing its third-quarter results. The presence of confounding information created additional risk because the jury would have to decide this issue based on expert testimony. "When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured." *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012); *see also In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").

Lead Plaintiffs still faced the substantial hurdles of a motion to dismiss, summary judgment, a trial, and likely appeals -- a process which could possibly extend for years and might

lead to a smaller recovery, or no recovery at all. Indeed, even prevailing at trial would not have guaranteed a recovery larger than the $1,100,000 settlement. *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing jury verdict awarding investors $2.46 billion on loss causation and damages grounds, and remanding for new trial on these issues), *reh'g denied* (July 1, 2015); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (following jury verdict in plaintiff's favor on liability, district court granted defendants' motion for judgment as matter of law because there was insufficient evidence to support finding of loss causation), *aff'd sub nom.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).[6]

Despite the substantial risks inherent in this litigation, Co-Lead Counsel were able to achieve a $1.1 million Settlement. This is an extremely favorable result for the Settlement Class in light of the aforementioned risks and, as such, this factor militates heavily in favor of the requested fee.

---

[6] *See also Anixter v. Home-Stake Prods. Co.*, 77 F.3d 1215, 1235 (10th Cir. 1996) (overturning securities-fraud class-action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *Backman v. Polaroid Corp.*, 910 F.2d 10, 18 (1st Cir. 1990) (*en banc*) (after 11 years of litigation, and following a jury verdict for plaintiffs and affirmance by a First Circuit panel, plaintiff's claims were dismissed); *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994) (directed verdict after plaintiff's presentation of its case to jury), *aff'd*, 50 F.3d 6 (4th Cir. 1995); *In re Apple Computer Sec. Litig.*, No. C-84-20148, 1991 WL 238298, at *1-2 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions).

### 2. The Value Of The Services On An Hourly Basis, And A Lodestar Cross-Check, Supports The Requested Fee

#### a. Services Rendered By Plaintiff's Counsel

A considerable effort on the part of Co-Lead Counsel was required to obtain this outstanding Settlement.  As set forth in greater detail in the Joint Declaration, Co-Lead Counsel extensively developed the record by, among other things:

- Performing an in-depth review and analysis of (i) TCPI's public filings with the SEC; (ii) research reports by securities and financial analysts regarding TCPI; (iii) transcripts of TCPI's investor conference calls; (iii) press releases and media reports; (iv) economic analyses of the historical movement, pricing and trading data for publicly traded TCPI's common stock; (v) consultation with relevant experts; and (vi) other publicly available material and data (Joint Decl. ¶61);

- Consulting with experts on issues such as loss causation, market efficiency and damages  (*Id.*);

- Drafting Lead Plaintiffs' mediation statement, preparing for and participating in the mediation process, including a full-day mediation session held before former U.S. District Court Judge Wayne Andersen (*Id.*); and

- Negotiating and drafting the Stipulation and exhibits thereto, as well as the motion for preliminary approval of the Settlement (*Id.*).

As a result of that effort, a substantial, immediate and certain recovery of $1.1 million has been obtained after the pleading stage and prior to the completion of full discovery without the substantial expense, additional delay, risk and uncertainty of continued litigation.

#### b. The Lodestar Cross-Check

When applying the percentage-of-the-fund method, courts will look at the hours expended by counsel, either as a factor in the fee analysis or as an independent cross-check to prevent counsel from receiving a windfall.  *See Cardinal Health*, 528 F. Supp. 2d at 764; *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *18.  Counsel's lodestar is determined by multiplying "the number of hours reasonably expended on the case by a reasonable hourly rate."  *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005).  In a complex, multidistrict litigation, reasonable

hourly rates may be determined with reference "to national markets, an area of specialization, or any other market [the court believes] is appropriate to fully compensate attorneys in individual cases." *McHugh v. Olympia Entm't, Inc.*, 37 Fed. Appx. 730, 740 (6th Cir. 2002) ("A court's choice not to apply local market rates for attorney fees is not an abuse of discretion."); *see also In re UnumProvident Corp. Derivative Litig.*, No. 1:02-CV-386, 2010 WL 289179, at *6 (E.D. Tenn. Jan. 20, 2010) (in complex case, approving rates charged by plaintiff's out-of-town counsel where defendants were also represented by large out-of-town firms).

As shown in the declarations submitted with this motion, Co-Lead Counsel have worked approximately 550 hours on this case. (*See* Joint Decl. ¶71; Declaration of Leigh Handelman Smollar, ¶7 & Exh. B; Declaration of Adam M. Apton, ¶7 & Exh. B.)[7] Applying the historical (meaning then-present) hourly rates charged by counsel to the number of hours expended yields a total "lodestar" of $351,806.50. (*See id*.) Thus, the requested fee of 30%, or $330,000, represents a ***negative*** multiplier on Plaintiff's Counsel's lodestar of 0.93.

In awarding a fee under the lodestar method or conducting a cross-check in complex class actions, Courts have found it appropriate to apply a multiplier to counsel's lodestar to reflect factors such as the contingency risks of the litigation and the quality of the work performed. *See*

---

[7] As is customary in seeking a percentage-of-the-fund award in common fund cases and submitting data for a lodestar cross-check, Co-Lead Counsel have each submitted a declaration that includes a schedule identifying the lodestar of each firm (by individual, position, billing rate, and hours billed). *See Southeastern Milk*, 2013 WL 2155387, at *2 n.3 ("Counsel have provided to the Court summary schedules indicating the number of hours spent by the attorneys involved in this litigation and the lodestar calculation based on historical billing rates."). "Unlike the situation when the Court employs the lodestar method in full, 'the hours documented by counsel need not be exhaustively scrutinized by the district court' where a lodestar cross-check is used." *Id.* (quoting *In re WorldCom Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000))); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005) (the cross-check "need entail neither mathematical precision nor bean-counting.").

*Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1278 (S.D. Ohio 1996); *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010). Given that use of the multiplier here results in a negative or fractional multiplier, the lodestar cross-check result indicates that the fees requested by Co-Lead Counsel are reasonable. *Walls v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-673-DJH, 2016 WL 6078297, at *6 (W.D. Ky. Oct. 14, 2016) (finding the fee award sought by Class Counsel to be reasonable where the lodestar cross-check results in a negative multiplier, meaning that the requested fees are less than the lodestar amount).

Indeed, courts within the Sixth Circuit have awarded fees with much higher multipliers. *See Cardinal Health*, 528 F. Supp. 2d at 768 (approving multiplier of 6, and observing that "[m]ost courts agree that the typical lodestar multiplier" on a large class action "ranges from 1.3 to 4.5"); *Bailey v. AK Steel Corp.*, No. 1:06-CV-468, 2008 WL 553764, at *2 (S.D. Ohio Feb. 28, 2008) (awarding multiplier of 3.08, noting that "[c]ourts typically . . . increas[e] the lodestar amount by a multiple of several times itself" and identifying "normal range of between two and five"); *Manners v. Am. Gen. Life Ins. Co.*, No. Civ.A. 3-98-0266, 1999 WL 33581944, at *31 (M.D. Tenn. Aug. 11, 1999) (3.8 multiplier); *General Motors*, slip op. at 2, memo. at 17, ECF Nos. 139, 102 (multiplier of 3.7); *Broadwing*, No. 1:02-cv-00795, slip op. at 9, ECF 65 (3.56 multiplier); *In re CMS Energy Sec. Litig.*, No. 02-cv-72004, 2007 WL 9611274, at *4 (E.D. Mich. Sept. 6, 2007) (2.61 multiplier).  Consequently, whether analyzed as a "cross-check" on the percentage-of-the-fund method -- or under the lodestar method -- this factor supports a finding that the requested fee is reasonable.

### 3. Society's Stake In Rewarding Attorneys Who Enforce The Securities Laws Supports The Requested Fee

The federal securities laws are remedial in nature and, to effectuate their purpose of

protecting investors, the courts must encourage private lawsuits. *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988). Adequate compensation is, of course, a necessary component of encouraging attorneys to assume the risk of litigation in the public interest. Indeed, without adequate compensation, it would be difficult to retain the caliber of lawyers necessary, willing and able to properly prosecute to a favorable conclusion complex, risky and extremely expensive securities class actions such as this one. Thus, "[i]n evaluating the reasonableness of a fee request, the court also must consider society's stake in rewarding attorneys who produce a common benefit for class members in order to maintain an incentive to others." *Delphi*, 248 F.R.D. at 503; *Ramey*, 508 F.2d at 1196.

It simply cannot be disputed that society benefits from fair and efficient capital markets and that private enforcements of the securities laws is a necessary component thereof. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (private securities actions are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC). Moreover, class actions are often the only economically feasible way for investors -- both large and small -- to obtain compensation when they are victims of securities fraud. Given that the Settlement in this case will provide meaningful relief to hundreds of investors, this factor plainly weighs in favor of the requested award. *See Eltman v. Grandma Lee's, Inc.*, No. 82 Civ. 1912, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding. The concept of a private attorney acting as a 'private attorney general' is vital to the continued enforcement and effectiveness of the Securities Acts." (citation omitted)); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001) ("Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling such small claimants

to pool their claims and resources.").

**4.      The Contingent Nature Of The Representation Supports The Requested Fee**

"Whether counsel's services were undertaken on a contingent fee basis is another factor for the Court to consider in evaluating a fee request." *Delphi*, 248 F.R.D. at 503-04.  Here, Co-Lead Counsel have prosecuted the Action entirely on a contingent basis, knowing that it could possibly last for many years, require the expenditure of thousands of attorney hours and millions of dollars in expenses and ultimately result in a loss at summary judgment, trial or on appeal.  In fact, Co-Lead Counsel have incurred $32,911.11 in out-of-pocket expenses litigating for the benefit of the Settlement Class, received no compensation during the almost two years this action has been pending, and were never guaranteed reimbursement of these costs or the payment of any fee.  (*See* Joint Decl. ¶73; Declaration of Leigh Handelman Smollar, ¶8 & Exh. C; Declaration of Adam M. Apton, ¶8 & Exh. C.)  Yet, as a result of Co-Lead Counsel's efforts, a $1.1 million recovery was obtained.  This factor supports a finding that the fee request is reasonable.  *See id.*; *Stanley v. U.S. Steel Co.*, No. 04-74654, 2009 WL 4646647, at *3 (E.D. Mich. Dec. 8, 2009) ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees.").

**5.      Complexity Of The Litigation Supports The Requested Fee**

The complexity of the litigation is a significant factor to be considered in determining the reasonableness of an attorneys' fee award.  *See Delphi*, 248 F.R.D. at 504.  As numerous courts have recognized, "[s]ecurities litigation class actions are inherently complex." *New England Health Care*, 234 F.R.D. at 634; *Fogarazzo v. Lehman Bros., Inc.*, No. 03-cv-5194 (SAS), 2011 WL 671745, at *3 (S.D.N.Y. Feb. 23, 2011).  The legal and factual issues are extremely complicated and the outcome is highly uncertain.  *Maher v. Zapata Corp.,* 714 F.2d 436, 455 (5th Cir. 1983) (securities litigation is "'notoriously difficult and unpredictable'" (quotation omitted));

16

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 172 (S.D.N.Y. 2007) ("Securities class litigation 'is notably difficult and notoriously uncertain.'" (quotation omitted)). This case was no exception.

As noted above and in the Joint Declaration, this litigation raised many complex factual and legal questions that required extensive efforts by Co-Lead Counsel and consultation with experts to bring to resolution. To prosecute the case, Co-Lead Counsel had to, among other things, gain a working knowledge of the lighting industry and fully understand TCPI's operations and structure in order to address the issues related to Defendants' alleged improper payments and relationships with certain vendors. Co-Lead Counsel also had to face complicated loss causation and damages issues. These were not easy tasks, and Co-Lead Counsel consulted with experts in loss-causation and damages when crafting their mediation statement. (Joint Decl. ¶¶39-48.) Had Co-Lead Counsel not devoted the necessary resources and attention to the complicated questions raised in this case, they simply could not have prevailed. *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action."); *see also In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL 1500, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages. These challenges are exacerbated . . . where a number of controlling decisions have recently shed new light on the standard for loss causation.").

Consequently, the complexity of the Action weighs heavily in favor of the requested fee award. *See City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014) ("[T]he complex and multifaceted subject matter

involved in a securities class action such as this supports the fee request."), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

6. **The Professional Skill And Standing Of Counsel Supports The Requested Fee**

Co-Lead Counsel included nationally known leaders in the fields of securities class actions and complex litigation. *See* Firm Biographies, attached to the Declarations of Leigh Handelman Smollar and Adam M. Apton as Exhibits A, respectively; *see also* http://pomerantzlawfirm.com/ and https://www.zlk.com/. The quality of the representation is best demonstrated by the benefit achieved for the Settlement Class and the effective and efficient prosecution and resolution of the Action under difficult and challenging circumstances. The substantial recovery obtained for the Settlement Class is the direct result of the efforts of highly-skilled and specialized attorneys who possess significant experience in the prosecution of complex securities class actions. From the outset of the Action, Co-Lead Counsel engaged in a concerted effort to obtain the maximum recovery for the Settlement Class and committed considerable resources and time in the research, investigation and prosecution of the case. Based upon Co-Lead Counsel's diligent efforts and their skill and reputation, they were able to negotiate a highly favorable result under difficult and challenging circumstances. Such quality, efficiency, and dedication support the requested fee.

The quality of the work performed by Co-Lead Counsel in attaining the Settlement should also be evaluated in light of the quality of opposing counsel. Here, Co-Lead Counsel were opposed by Skadden Arps, a highly-qualified, global defense firm that spared no effort in the defense of its clients. Plaintiff's Counsel were nevertheless able to develop a case that was sufficiently strong to persuade Defendants to settle on terms that represent a fair, reasonable and adequate recovery to the Settlement Class. "The ability of [Lead Plaintiffs'] Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the

18

fee award requested."  *Delphi*, 248 F.R.D. at 504.

For the reasons set forth above, Co-Lead Counsel respectfully request that the Court grant their request for an attorneys' fee award in the amount of 30% of the Settlement Fund, or $330,000 plus interest earned at the same rate as the Settlement Fund.[8]

### E.    Plaintiff's Counsel's Expenses Are Reasonable And Were Necessarily Incurred To Achieve The Benefit Obtained

Co-Lead Counsel also request reimbursement of the expenses they incurred in connection with the prosecution of this Action in the amount of $32,911.11.  (*See* Joint Decl. ¶73.)  "Under the common fund doctrine, 'class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses.'"  *New England Health*, 234 F.R.D. at 634-35 (quotation omitted); *see Se. Milk*, 2013 WL 2155387, at *8 ("expense awards are customary" in common fund cases (citing *In re F & M Distribs., Inc. Sec. Litig.*, No. 95-CV-71778-DT, 1999 WL 35771208 (E.D. Mich. June 29, 1999))).  In determining which expenses are reasonable and compensable, the question is whether such costs are of the variety typically billed

---

[8] The 30% fee request is also consistent with the *ex ante* agreement between TCPI Investor Group and Co-Lead Counsel. *See* Declarations of Adela Bai (¶7), Michael Rivkind (¶7), and Roland Willis (¶7) (Lead Plaintiffs' declarations approving of 30% fee request). Many courts have found that under the PSLRA, an *ex ante* fee agreement between the court appointed Lead Plaintiff and Co-Lead Counsel is entitled to a "presumption of reasonableness." *In re Cendant Corp. Litig.*, 264 F.3d 201, 282-83 (3d Cir. 2001); *accord In re Viropharma Inc. Sec. Litig.*, No. 12-cv-2714, 2016 WL 312108, at *16 (E.D. Pa. Jan. 25, 2016) ("Because Lead Plaintiff approves of the Attorneys' Fees, the Court affords the attorneys' fees requested a presumption of reasonableness."); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 356 (S.D.N.Y. 2005); *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 997 (D. Minn. 2005); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 466 (S.D.N.Y. 2004).

19

by attorneys to paying clients in similar litigation.  *See New England Health,* 234 F.R.D. at 634-35.

Here, Plaintiff's Counsel have each submitted separate declarations attesting to the accuracy of their expenses, and listing them by specific category and amount.  (*See* Declarations of Leigh Handelman Smollar and Adam M. Apton as Exhibits C, respectively.)[9]  A significant portion of the expenses were incurred for professional services rendered by TCPI Investor Group's experts and the mediator, and the remaining expenses are attributable to the costs of copying documents, travel and other incidental expenses incurred in the course of the litigation.  (*See id.*) These expenses were critical to Lead Plaintiffs' success in achieving the proposed Settlement, and they are of the type typically billed by attorneys to paying clients in similar litigation.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) ("The expenses incurred-which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review-are the type for which 'the paying, arms' length market' reimburses attorneys."); *Delphi*, 248 F.R.D. at 504-05 (approving reimbursement of $1.3 million in costs and expenses for "such items as accounting and damages expert and consultant fees, management and photocopying of documents, on-line research, messenger service, postage, express mail and overnight delivery, long distance and facsimile expenses, transportation, meals, travel and other incidental expenses directly related to the prosecution of this action.").  They are, therefore, "properly chargeable to the Settlement fund." *Global Crossing,*

---

[9] *See also Se. Milk*, 2013 WL 2155387, at *8 ("Although the declarations submitted by class counsel are not itemizations of all of the expenses incurred, but rather an aggregate listing of the expenses for each category, the Court finds the declarations submitted sufficiently detailed and the Court is persuaded that the expenses are legitimate and are reasonable in the case and will approve payment to class counsel from the common settlement fund in the amount of $798,237.66 as reimbursement for their out-of-pocket expenses.").

225 F.R.D. at 468. Moreover, not a single objection to the expense request has been received, and the amount requested is below the $35,000 limit disclosed in the Notice posted on the Settlement website. (*See* Declaration of Sarah Evans at ¶¶11, 12.) Accordingly, Co-Lead Counsel respectfully request payment for these expenses.

### F. Lead Plaintiffs Should Be Awarded Their Reasonable Costs Under The PSLRA

In connection with its request for reimbursement of Litigation Expenses, Co-Lead Counsel also seeks awards to each of the Lead Plaintiffs in the amount of $5,000in connection with their representative roles in this Action. Joint Decl. ¶¶74, 75. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

Here, Lead Plaintiffs seek an award of $5,000 each for time dedicated to furthering and supervising the Action. (*See* Declarations of Adela Bai, Michael Rivkind, and Roland Willis.) Lead Plaintiffs took an active role in the litigation, including reviewing significant pleadings and briefs in the Action, communicating regularly with Co-Lead Counsel regarding developments in the Action, authorizing settlement discussions, monitoring the progress of settlement negotiations, approving of the Settlement and reviewing the settlement documentation. (*Id*. ¶¶2-3, 5-6.) The time Lead Plaintiffs spent supervising this litigation was time they could not spend on other activities and, thus, represented a cost to the Lead Plaintiffs.

Numerous courts have approved reasonable awards to compensate lead plaintiffs for the time and effort they spent on behalf of a class. For example, in *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc*., 234 F.R.D. 627, 635 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) the Court awarded Lead Plaintiffs $5,000

and $7,500 for time and expenses "both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." Accordingly, Lead Plaintiffs respectfully request that the Court grant their request for reimbursement of $5,000 each.  This amount is reasonable, was incurred in the course of representing the Settlement Class, and should be approved.

IV.    **CONCLUSION**

For the foregoing reasons, Co-Lead Counsel respectfully request that the Court grant their fee and expense application.

Dated: December 22, 2017                              Respectfully submitted,

s/ Adam M. Apton
Nicholas I. Porritt
Adam M. Apton
Levi & Korsinsky LLP
1101 30th Street N.W., Suite 115
Washington, D.C. 20003
Telephone: (202) 524-4290

Leigh Handelman Smollar
Patrick v. Dahlstrom
Omar Jafri
POMERANTZ LLP
10 South LaSalle Street, Ste. 3505
Chicago, IL 60603
(312) 377-1181

*Counsel for Lead Plaintiff TCP*
*International Investor Group*
*and Co-Lead Counsel for the Class*