# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF OHIO

# EASTERN DIVISION

| | |
|---|---|
| ADELA BAI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TCP INTERNATIONAL HOLDINGS LTD., KAREL ROBERT DEN DAAS, ELLIS YAN, and BRIAN CATLETT,<br><br>Defendants. | Case No. 1:16-cv-00102<br><br>JUDGE: Hon. Donald C. Nugent |

**JOINT DECLARATION OF LEIGH HANDELMAN SMOLLAR AND ADAM M. APTON IN SUPPORT OF MOTION FOR AN ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND DIRECTING DISSEMINATION OF NOTICE TO THE CLASS AND MOTION IN SUPPORT OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND REIMBURSEMENT AWARD TO LEAD PLAINTIFFS**

We, Leigh Handelman Smollar and Adam M. Apton, hereby declare as follows:

1. We are respectively, partners and senior associates at the law firms of Pomerantz LLP and Levi & Korsinsky, LLP. We submit this Declaration in support Co-Lead Plaintiffs' Motion for Certification of the Class for Settlement Purposes, Final Approval of the Settlement, and Approval of the Plan of Allocation and the Motion for an Award of Attorneys' Fees and Reimbursement of Expenses in the above captioned litigation (the "Action") between Plaintiffs Michael Rivkind, Robert H. Anthony, Adela Bai, and Roland L. Willis, individually and on behalf of the Settlement Class (collectively, the "TCP International Investor Group" or "Lead Plaintiffs"), and TCP International Holdings Ltd. ("TCPI" or the "Company"), Karel Robert den Daas, Ellis Yan, and Brian Catlett (collectively, the "Individual Defendants," and, together with TCPI, the "Defendants").[1]

2. By Order dated March 18, 2016, this Court appointed the TCP International Investor Group as Co-Lead Plaintiffs, and Pomerantz LLP and Levi & Korsinsky, LLP as Co-Lead Counsel.

3. We have personal knowledge of the various matters set forth herein based on my day-to-day participation in the prosecution and settlement of this Action, and, if called as a witness, could and would testify completely thereto. Additionally, as the primary partners associated with this matter, we have learned about, and have a detailed understanding of the efforts of other attorneys who have worked on the Action. Additional matters are attested to, via separate declaration, by the claims administrator in this case, Strategic Claims Services ("Claims Administrator" or "Strategic"), as well as Co-Lead Counsel, Levi & Korsinsky, LLP.

**I. INTRODUCTION**

4. After an inquiry into the merits of the claims, assessing defenses, and estimating likely damages that could be recovered by the Class, the Parties agreed to arm's-length

---

[1] Unless otherwise defined, capitalized terms herein have the same meaning as set forth in the Stipulation of Settlement, dated as of July 20, 2017 (the "Stipulation") (Dkt. No. 71, filed on July 24, 2017).

negotiations under the supervision of a respected mediator, the Honorable Wayne Andersen (Ret.). As a result of these negotiations, the Parties agreed to a settlement valued at $1.1 million (the "Settlement").

5. On July 28, 2017 the Court preliminarily approved the Settlement and directed Notice of the Settlement to the Class. (ECF No. 75).

6. In accordance with the Preliminary Approval Order, as of December 15, 2017, an aggregate of 1,476 Postcard Notices were mailed to potential Settlement Class members and beginning on August 28, 2017 the Claims Administrator and Co-Lead Counsel published the Summary Notices. Further details are provided in the Declaration of Sarah Evans, dated December 15, 2017, the Court-appointed Claims Administrator in this case, filed as a separate declaration concurrently with this declaration (the "Evans Declaration").[2] The Stipulation, the Notice, the Postcard Notice, the Proof of Claim, and the Stipulation of Settlement were posted on the Claims Administrator's website. Both Notice described the Settlement, the Plan of Allocation, the maximum amount of attorneys' fees and litigation expenses that Co-Lead Counsel would seek, Settlement Class Members' rights; and the procedures and deadlines for exercising those rights. Thus, the notice program fully complied with the Court's Preliminary Approval Order and was the best notice practicable under the circumstances and met the requirements of Fed. R. Civ. P. 23(c), (e), and (h), the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process.

7. As of December 15, 2017, although the deadlines have not yet passed, no exclusions or objections have been received. *See* Evans Decl. at ¶¶11, 12.[3]

8. As explained herein, and in the memoranda filed herewith, Co-Lead Counsel respectfully submit that the Settlement is an excellent result for the Settlement Class and worthy

---

[2] While the Claims Administrator issued two notices (*see* Evans Declaration at ¶8), Co-Lead Counsel published an additional six Summary Notices. *See* Exhibit A attached collectively hereto.
[3] The deadline to opt out and file objections is January 12, 2018. Accordingly, Co-Lead Plaintiffs intend to file additional papers in accordance with the applicable deadlines in the Preliminary Approval Order to address all objections or opt outs as necessary.

of approval, that the Plan of Allocation is equitable and just, and that the requested fee and expense reimbursement should be awarded in full.

## II. BACKGROUND

### A. LITIGATION EVENTS

#### 1. The Complaint and Procedural History

9. On November 11, 2015, a class action complaint on behalf of purchasers of TCPI securities between May 8, 2015 and November 5, 2015, inclusive, styled *Bai v. TCP International Holdings Ltd. et al*, 1:16-cv-00102-DCN (the "Complaint"), was filed against Defendants for claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5.

10. The Complaint alleges claims arising from statements concerning TCPI's business, operations, and prospects. Specifically, the Complaint alleges that Defendants made false and/or misleading statements and/or failed to disclose that: (i) TCPI's Chairman, defendant Ellis Yan ("Yan"), had made improper payments with his personal funds relating to TCPI's business; (ii) improper relationships existed between Yan and the Company's Vice-Chairman, Zhaoling Yan, and certain vendors; and (iii) as a result of the foregoing, Defendants' statements about TCPI's business, operations, and prospects were false and misleading and/or lacked a reasonable basis.

11. On November 5, 2015, post-market, TCPI announced that it would delay the release of the Company's third-quarter financial results due to a pending investigation by the Audit Committee of TCPI's Board of Directors (the "Audit Committee") concerning the scope and propriety of payments made by its Chairman with his personal funds relating to TCP's business, and whether relationships exist between Yan and Zhaoling Yan and certain vendors. TCPI also announced that it did not anticipate filing its third-quarter Form 10-Q by the extended due date of November 23, 2015. TCPI further announced that the Audit Committee had retained independent legal and accounting advisors in connection with its investigation. Lead Plaintiff alleges that on

this news, the Company's stock fell $1.02, or more than 54%, to close at $1.20 on November 6, 2015, resulting in damages to it and other shareholders.

12. On March 18, 2016, the Court appointed the TCP International Investor Group as Lead Plaintiff, and Pomerantz LLP and Levi & Korsinsky, LLP as Co-Lead Counsel for the putative class.

13. At the March 18, 2016 hearing before the Court, Co-Lead Plaintiffs indicated that it intended to file an amended complaint once TCPI released updated quarterly financial results. Co-Lead Plaintiffs believed that these financial results would include information concerning the improper payments between Yan and TCPI's customers and/or vendors and, therefore, were highly relevant to the allegations at issue. (ECF No. 56).

### B. RESOLVING THE LITIGATION

14. Following the appointment of Lead Plaintiff, Co-Lead Counsel continued its investigation into the facts underlying the litigation. Co-Lead Counsel, through investigators retained on behalf of Lead Plaintiff, interviewed several former employees of TCPI to obtain additional information concerning (i) the improper payments between Yan and TCPI's vendors and (ii) status of internal controls over financial reporting at the Company.

15. By May 25, 2016, TCPI had not yet released its updated quarterly financial results and/or the results of an internal investigation into the allegations at issue in this matter. On consent, the parties asked the Court to stay the case pending the release of the TCPI's financial information. The Court granted the request to stay the case, and continued the matter to August 2, 2016. (ECF No. 58).

16. By August 2, 2016, TCPI still had not yet released its updated quarterly financial results and/or the results of an internal investigation into the allegations at issue in this matter. The parties again asked the Court to stay the case. The Court granted the request to stay, and continued the matter to December 6, 2016. (ECF No. 63).

17. On December 2, 2016, the parties informed the Court that they had agreed to explore settlement through private mediation and, in light of the possibility of settlement, requested

4

that the case be continued to a date after the anticipated mediation. (ECF No. 65) The Court granted the requested and set a status conference for February 22, 2017. (ECF No. 66).

18. At or around the same time, the parties ultimately agreed to mediate before Hon. Wayne Anderson (Ret.). The mediation was scheduled for January 25, 2017.

19. Prior to the mediation, Lead Plaintiffs' counsel prepared a confidential mediation statement outlining the relative strengths and weaknesses of Plaintiff's case as well as a reply mediation statement in response to the statement prepared by Defendants.

20. Counsel for all parties, as well as representatives from TCPI's insurance carrier, attended an all-day mediation session with Hon. Wayne Anderson (Ret.) on January 25, 2017. The mediation resulted in a mediator's recommendation of $1.1 million in cash that was ultimately accepted by the parties.

21. After reaching an agreement in principle regarding the relief to the Settlement Class, the parties began preparing the settlement documents, including the stipulation of settlement, the class notice, the summary notice, the claim form, and the proposed orders granting final approval and entering final judgment. Over the next several weeks, the parties exchanged drafts of the settlement documents, which provided for the parties to engage in confirmatory discovery. Co-Lead Plaintiffs, as part of the confirmatory discovery process, reviewed the Company's internal documents and conducted an interview of Brian Catlett, TCPI's Chief Executive Officer.

22. In the weeks and months that followed, the Parties continued to negotiate over the details of the Settlement, as well as the terms of the Stipulation of Settlement, which included numerous discussions and exchanges of drafts of the Stipulation and its many exhibits.

23. After reaching an agreement regarding the details of the Settlement and the content of the supporting settlement documents, the parties signed a Stipulation of Settlement on July 20, 2017. Thereafter, Co-Lead Plaintiffs filed a motion for preliminary approval of the Settlement.

24. Throughout the course of the Action and settlement negotiations, the Parties were represented by counsel experienced in securities class actions. The Settlement was the result of an

adversarial process designed to produce a fair and honest compromise, was the result of arm's-length negotiations, and was aided by an experienced and well-respected mediator.

### C. PRELIMINARY APPROVAL OF THE SETTLEMENT

25. The Court preliminarily approved the Settlement on July 28, 2017. The Court's Preliminary Approval Order: (a) found the Settlement to be sufficiently within the range of reasonableness to warrant the conditional certification of the Class, the scheduling of the final settlement approval hearing ("Final Approval Hearing"), and the dissemination of Postcard Notice to Class Members; and (b) appointed Strategic Claims Services to serve as the Claims Administrator.

26. The Court set the Final Approval Hearing for February 1, 2018, at 10:00 a.m.

## III. SUMMARY OF THE SETTLEMENT AND NOTICE TO THE CLASS

### A. SUMMARY OF THE SETTLEMENT AND THE PLAN OF ALLOCATION

27. The Settlement Fund is an all-in settlement number, valued at $1,100,000, meaning that it includes all attorneys' fees, administration costs, expenses, class member benefits, as well as any other costs, expenses, or fees of any kind whatsoever associated with the resolution of the Action.

28. The Settlement Class consists of "all persons and entities who purchased or otherwise acquired the publically traded common stock of TCPI (symbol: TCPI) from May 9, 2015, through November 5, 2015, and who, based on conduct asserted in the Action, were damaged thereby." Dkt. No. 75 at ¶4.

29. The Settlement Fund is to be distributed on a *pro rata* basis pursuant to the Plan of Allocation to those Settlement Class Members submitting valid claims (the "Authorized Claimants"). As set forth in the Notice, the Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Settlement Fund (approved costs, fees and expenses) based upon each Authorized Claimant's Recognized Claim.

### B. NOTICE OF THE SETTLEMENT

30. Pursuant to the Court's Preliminary Approval Order, Co-Lead Counsel, through the Claims Administrator, implemented a comprehensive notice program whereby notice was given to the members of the Class. The Postcard Notice, which was mailed to Settlement Class Members, informed them of relevant deadlines, including the claims, objection and exclusion deadline, and directed shareholders to the website to view the Notice as well as inform them that Strategic Claims would mail them a Notice if requested. The Notice contained, *inter alia*, the following information necessary to evaluate the benefits of the Settlement to the Class Members: (a) the amount and makeup of the Settlement Fund; (b) the Plan of Allocation; (c) that Co-Lead Counsel would apply for a fee award in an amount not to exceed 30% of the Settlement Fund, as well as expenses incurred prosecuting this Action in an amount not to exceed $35,000, plus interest and file papers in support; (d) that Lead Plaintiffs would request a reimbursement for time and expense spent in litigating the Action in an amount not to exceed $5,000 each; (e) that any Class Member could object to the Settlement and/or fee and expense application or seek exclusion from the Class; (f) a detailed explanation of the reasons for the Settlement; (g) that the deadline for requesting exclusion from the Settlement is January 12, 2018; (h) that objections to the Settlement, the Plan of Allocation or the fee application must be received on or before January 12, 2018; (i) the date, time, and location of the Final Approval hearing and that Settlement Class Members have the right to attend and be heard; and (j) that the deadline for filing Proofs of Claim is March 5, 2018.

31. As of December 15, 2017, an aggregate of 1,476 copies of the Postcard Notice had been disseminated to potential Settlement Class Members by the Claims Administrator. *See* Evans Declaration at ¶6.

32. Furthermore, since August 11, 2017, the Claims Administrator has established and maintained a website dedicated to the Settlement (www.strategicclaims.net/TCP) to provide additional information to Settlement Class Members. Website users can access and download copies of the Notice, Summary Notice, Proof of Claim, and Stipulation. *See* Evans Declaration at ¶5.

### C. PUBLICATION OF THE SUMMARY NOTICE

33. Pursuant to the Preliminary Approval Order, the Claims Administrator published the Summary Notice to be transmitted over *Globe Newswire* and *Investor's Business Daily*, a national business-oriented newswire service, on August 28, 2017. Attached to the Evans Declaration as Exhibit C is a confirmation report of the wire service publication and a copy of the publication. Co-Lead Counsel, similarly, published additional notices of the Settlement over *Globe Newswire* on no less than eight (8) occasions. *See* Exhibit A.

34. All objections to the Settlement, the Plan of Allocation and the Fee Request and requests for exclusion from the Class are required to be filed no later than January 12, 2018.

35. As of December 15, 2017, there have been no exclusions or objections concerning the Settlement, the Plan of Allocation, or request for attorneys' fee and expenses. Evans Decl. at ¶¶11, 12.

## IV. THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

### A. THE PARTIES WERE ABLE TO ASSESS THE STRENGTHS AND WEAKNESSES OF THEIR CASES

36. Co-Lead Counsel in furtherance of the Settlement Class' claims undertook an extensive investigation, including interviews of former employees and review of a substantial record of public records regarding TCPI's business and the allegations alleged in the Action. Co-Lead Counsel thoroughly investigated Defendants' defenses, including those raised by the briefing prior to the mediation session in front of the Hon. Wayne Anderson (Ret.).

37. Co-Lead Counsel also reviewed and analyzed the Company's internal documents as part of the settlement process. In addition, Lead Counsel conducted an interview of the Company's Chief Executive Officer, Defendant Brian Catlett.

38. As a result of this research and investigation, Co-Lead Counsel had a comprehensive understanding of the strengths and weaknesses of the case. Based on this information, Co-Lead Plaintiffs and Co-Lead Counsel were able to make an informed decision concerning the fairness of the Settlement prior to its presentation to this Court.

### B. THE SETTLEMENT APPROPRIATELY BALANCES THE RISK OF LITIGATION AND THE BENEFIT TO THE SETTLEMENT CLASS OF A CERTAIN RECOVERY

#### 1. Continued Litigation Posed Substantial Risks in Establishing Liability

39. As a result of Co-Lead Counsel's factual and legal research and analysis and the Settlement negotiations, we were able to identify many defenses that may have been raised in the course of continued litigation against Defendants. Although we would forcefully argue the merits of our claims at trial, Defendants could have offered potentially effective arguments of their own in their defense to Co-Lead Plaintiffs' claims.

40. Several important factors figured prominently in Lead Plaintiffs' decision to accept the proposed Settlement on behalf of themselves and the Class. First and foremost of these considerations was the substantial, and immediate, financial benefit to the Settlement Class of the $1,100,000 Settlement. Based on Lead Counsel's consultations with experts on the issue of damages, Lead Counsel was able to achieve 50% of total maximum damages, which is an incredible result for the Class.[4] So, even if Lead Plaintiffs achieved their best case (or even near best case) theoretical recovery, that would be premised entirely upon the assumptions that (i) Lead Plaintiffs prevail in proving his case for each member of the Settlement Class for the entire Class Period, (ii) the jury awards the full amount of damages sought by Lead Plaintiffs, and (iii) each and every eligible Settlement Class Member files a valid Proof of Claim.

41. If the Action proceeded, Defendants indicated that they intended to file a motion to dismiss the entire Action. Given the high pleading standards of the PSLRA, dismissal was possible. Accordingly, we considered the Settlement to be a favorable result in comparison with the prospects of dismissal on the pleadings and recovering nothing if the litigation continued.

---

[4] According to a 2017 report by NERA Economic Consulting, the "median of settlement value as a percentage of [ ] investor losses" was 18.4% for cases with investor losses less than $20 million. *See* Exhibit B at 36, Fig. 29. Additionally, according to a 2017 report by Cornerstone Research, in securities class actions where estimated damages were less than $50 million, the median recovery was only 7.3% of estimated damages. *See* Exhibit C at 8, Fig. 7.

42. Further, Defendants relayed that the accounting investigation that ensued was complicated by the fact that the witnesses and issues occurred in Asia. Ultimately, Lead Plaintiffs would have to take discovery on these issues and of witnesses in Asia, a very difficult and lengthy process.

43. As an aside, even assuming that Lead Plaintiffs could have defeated a motion to dismiss, a complex case such as this would likely result in a prolific amount of documents being produced regarding transactions over a multiple-year period, numerous party and non-party depositions.

44. After completion of all discovery, summary judgment motions would be expected. If the Action went to trial, the parties would then prepare a pre-trial order, propose jury instructions, and file and argue motions *in limine*. Both sides would spend significant time and resources in preparing this case for a lengthy and complicated trial.

45. Thus, the Settlement provides a significant and immediate recovery, without the further risk, expense and delay that continued litigation would bring.

### 2. Continued Litigation Posed Substantial Risk in Proving Damages

46. Further, even if we prevailed in establishing falsity and scienter, Lead Plaintiffs were required to prove loss causation *(i.e.,* that Defendants' misconduct caused the damages claimed). While we believe Lead Plaintiffs would overcome any arguments or defenses based on causation and damages, there is certainly no assurance that the jury would agree with Plaintiff's arguments.

47. Proof of damages would also have been extremely complex and involve considerable risk for Lead Plaintiffs. Proof of damages and causation in a "fraud-on-the-market" case like this entails a degree of complexity and sophistication that, in itself, is a risk to Lead Plaintiffs' ability to carry their burden of proving damages at trial. As such, if Lead Plaintiffs survived the *Daubert* motion, the damages valuations proffered by Lead Plaintiffs and Defendants would likely vary significantly.

48. Despite Lead Counsel's belief that the case is meritorious, we recognize the continued risks of litigation, including proving damages, does not amount in a certain recovery for the Settlement Class.

### 3. Collectability Risks to the Settlement Class

49. The amount of the Settlement must be considered in the context of the *collectability* of a greater judgment. The Settlement is being paid solely from available Director & Officer Liability Insurance Policies.

### 4. Balancing the Certainty of an Immediate Recovery Against the Expense and Likely Duration of Protracted Litigation Favors Settlement

50. Final approval of the Settlement will result in an immediate recovery for the eligible claimants. If the Action was to proceed rather than settle, there would be a lengthy motion to dismiss briefing process, formal discovery, class certification and motion for summary judgement.

51. As such, even if Lead Plaintiffs were successful in the litigation, it would likely be years before the Settlement Class Members would receive any recovery.

52. Co-Lead Counsel believes that approval of the Settlement is in the best interests of the Settlement Class as it eliminates the risk of no recovery.

### C. THE SETTLEMENT AMOUNT SUPPORTS APPROVAL OF THE SETTLMENT

53. Before representing to the Court that the Settlement is fair, reasonable, and adequate, Co-Lead Counsel, experienced securities class action attorneys, evaluated the prospects of obtaining a better result at trial- one that would also have to withstand later attack on appeal.

54. Lead Plaintiffs' expert estimated potential recoverable damages for the Class at $2.2 million. The Settlement, therefore, represents 50% of the total damages that their expert estimated could have been recovered if Lead Plaintiffs were completely successful on all issues of liability and damages in the Action.

55. However, Co-Lead Counsel realizes that achieving success on all issues of damages and liabilities is extremely unlikely.

11

### D. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

56. In order to develop a fair distribution plan, Co-Lead Counsel developed the Plan of Allocation based on the damages analysis and distribution of estimated damages rendered by Lead Plaintiffs' damages expert. This analysis was, at the time the Settlement was reached, the best estimate of damages that Lead Plaintiffs had and is still the analysis that Lead Plaintiffs would likely have presented to the trier of fact.

57. The Plan of Allocation, of course, like Lead Plaintiffs' estimate of Class-wide damages itself, assumes complete success on all aspects of liability and damages at trial and post-trial appeals. Thus, the Plan of Allocation credits all Settlement Class Members with the best possible result they could have achieved based on the number of TCPI shares they purchased, their cost basis in those shares, and the timing of their purchases and sales of TCPI common stock. Shaping each class member's recovery around these factors is only fair.

### V. CO-LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES

#### A. THE FEE APPLICATION

58. As compensation for their efforts, Co-Lead Counsel are applying for an award of attorneys' fees in the amount of 30% of the Settlement Fund ($330,000) and reimbursement of $32,911.11 in expenses reasonably incurred in the prosecution and settlement of the Action.[5] Co-Lead Counsel has prosecuted this case for two years without any compensation, and has incurred thousands of dollars in expenses without any guarantee of success.

59. The fee request is within the range of fees awarded by courts in the Sixth Circuit, as further detailed and discussed the Memorandum of Points and Authorities in Support of Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses filed concurrently herewith.

---

[5] The Notice in this case indicated that Plaintiff's Counsel would seek reimbursement of expenses up to $35,000.

## B. THE SETTLEMENT ACHIEVED

60. Co-Lead Counsel has succeeded in obtaining a $1.1 million cash settlement, plus interest. The benefit to the Class represents 50% of the total estimated damages that could be recovered if Co-Lead Plaintiffs were completely successful on all issues of liability and damages in the Action, and 100% of eligible Class members file and prove their claims. This achievement was the result of Co-Lead Counsel's litigation and settlement negotiations. As a result of this Settlement, Class Members will receive immediate compensation for their losses in TCPI common stock and will avoid the substantial risks of no recovery had the Action been litigated and lost at the motion to dismiss stage, summary judgment, trial or on appeal.

## C. CO-LEAD COUNSEL'S WORK AND EXPERTISE

61. Lead Plaintiffs, through the vigorous efforts of Co-Lead Counsel, engaged in extensive factual investigation and litigation of the claims alleged in the Complaint. To successfully prosecute the Action, Co-Lead Counsel conducted an extensive investigation and research into the merits of the Action and undertook significant efforts to bring the Action to its current procedural position, including:

- Reviewing and analyzing TCPI's Class Period and pre-Class Period public filings, annual reports, press releases, quarterly earnings call and investment conference transcripts, and other public statements;
- Collecting and reviewing a comprehensive compilation of reports, news articles, TCPI's filings with the United States Securities and Exchange Commission, and various other public records;
- Reviewing and analyzing stock trading data relating to TCPI;
- Researching and drafting the motion for appointment as Lead Plaintiffs;
- Consulting with an economic expert in the areas of loss causation, market efficiency, and damages;

13

- Preparing for and participating in a full-day mediation process with a nationally regarded third-party neutral, Hon. Wayne Anderson (Ret.), including drafting opening and reply mediation statements, obtaining a favorable settlement offer following arm's length negotiations with defense counsel, and participating in continued negotiation efforts over the weeks following the mediation to achieve and finalize the Settlement;
- Preparing the Settlement, motion papers and related documents necessary to provide notice of the Settlement to Class Members, and to obtain preliminary and final approval of the Settlement.

62. The expertise and experience of Co-Lead Counsel is also in important factor to be weighed in assessing a fair fee. As demonstrated in our firm biography, Co-Lead Counsel has achieved significant securities class action settlements, as well as being counsel of record in cases establishing important precedents that enable litigation such as this to be successfully prosecuted. *See* Declaration of Leigh Handelman Smollar, Exhibit A (Firm Resume of Pomerantz LLP). Co-Lead Counsel, Levi & Korsinsky, LLP, is also experienced in the field of securities class action litigation, as demonstrated by the accompanying declaration and exhibits of Adam M. Apton. *See* Declaration of Adam M. Apton, Exhibit A (Firm Resume of Levi & Korsinsky, LLP).

63. Co-Lead Counsel prosecuted the Action vigorously, expending substantial time and resources without any assurance of obtaining any compensation for their efforts. Co-Lead Counsel has already devoted a significant amount of time to this case, and fully expects to devote more time in the future administration and distribution of the Settlement.

### D. STANDING AND CALIBER OF OPPOSING COUNSEL

64. The quality of the work performed by Defendants' Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition.

65. Here, Defendants were represented by Skadden, Arps, Slate, Meagher & Flom LLP, and Benesch, Friedlander, Coplan & Aronoff LLP, prominent law firms with substantial

experience in securities class actions. Thus, the fact that Co-Lead Counsel achieved this Settlement for the Class in the face of such formidable legal opposition further evidences the quality of their work.

### E. THE RISKS OF CONTINGENT LIABILITY

66. Co-Lead Counsel undertook representation of Lead Plaintiffs and the Class on a wholly contingent basis. Co-Lead Counsel knew from the outset that they would expend a substantial amount of time prosecuting this action, yet receive no compensation if the Action proved ultimately unsuccessful. Thus, the contingent nature of payment of fees and expenses and the risks and complexity of the Action should be given substantial weight by the Court in considering the instant application for fees and expenses.

67. Continued litigation would have entailed significant risks to the Class, as the Action could be derailed in any number of ways before a final judgment in Plaintiff's favor was entered (and withstood possible appeal).

### F. THE REACTION OF THE CLASS TO THE REQUESTED FEE

68. As of December 15, 2017, 1,476 copies of the Postcard Notice have been mailed to potential Class Members, which directed Class Members to the settlement website and the Notice. The Notice advised Settlement Class Members that Co-Lead Counsel would apply for an award of attorneys' fees from the Settlement Fund, not to exceed 30% of the Fund.

69. To date, no objections or requests for exclusion have been received and no potential Settlement Class Member has otherwise challenged the merits of the Settlement or the fees/expenses to be received by Co-Lead Counsel.

### G. THE LODESTAR CROSSCHECK CONFIRMS THE REASONABLENESS OF THE REQUESTED FEE

70. Courts may also consider a lodestar/multiplier approach in assessing the reasonableness of a fee request. The lodestar is determined by multiplying the number of reasonable hours worked on a client's case by a reasonable hourly billing rate for such services given the geographical location, the nature of the services provided, and the experience of the

lawyer. It can then be increased or decreased based upon the contingent nature or risk in the particular case involved, and the quality of the attorney's work. A percentage increase or decrease of the lodestar amount is referred to as a "multiplier".

71. Altogether, Co-Lead Counsel dedicated over 550.60 hours to prosecuting this Action. These hours were compiled from contemporaneous time records maintained by each attorney and each paralegal affiliated with Lead Counsel. Applying Co-Lead Counsel's normal hourly rates, which are consistent with those charged by similarly skilled firms in their respective geographic areas, to the hours expended in this Action yields a lodestar amount over $351,806.50. Thus, Co-Lead Counsel are requested a negative multiplier of approximately (0.93), less than their lodestar amount.

## VI. CO-LEAD COUNSEL'S REQUEST FOR REIMBURSEMENT OF EXPENSES

72. This Action was pursued on a fully contingent basis.

73. Co-Lead Counsel expended a total of $32,911.11 in unreimbursed expenses in connection with the prosecution of this litigation, which is less than the estimate of $35,000 in expenses contained in the notice. The amount of out-of-pocket expenses, by category, incurred in this Action are set out in Exhibits C to the Declarations of Leigh Handelman Smollar and Adam M. Apton, filed herewith. The expenses requested are reflected on the records of Co-Lead Counsel, prepared in the normal course of business and are an accurate record of the expenses incurred. The expenses noted are reasonable and were incurred for items necessary to the prosecution of the Action. The expenses were incurred largely in conjunction with mediation fees and expert fees. Additionally, because the expenses were incurred for the benefit of the Class and are of a type generally reimbursed in the marketplace, they should be reimbursed from the common fund prior to the payment of attorneys' fees, in the same manner as an individual client would reimburse counsel's expenses. *See* Fee Brief.

## VII. LEAD PLAINTIFFS' REQUEST FOR REIMBURSEMENT OF COSTS

74. Lead Plaintiffs, Michael Rivkind, Robert H. Anthony, Adela Bai, Roland L. Willis, have dedicated substantial time and expenses to prosecuting the Action. For example, Lead Plaintiffs reviewed the Complaint and other pleadings in this matter, gathered documents, regularly communicated with Co-Lead Counsel to stay apprised of developments in the case, and participated in settlement discussions with Co-Lead Counsel.

75. Lead Plaintiffs submit herewith declarations documenting their reasonable reimbursement incurred in connection with the Action in the amount of $5,000 each. *See* Declarations of Roland Willis, Michael Rivkind, and Adela Bai, filed herewith.

## VIII. CONCLUSION

76. Co-Lead Counsel respectfully submit that, based on an understanding of the facts and circumstances concerning the subject matter of this Action, the principles of law applicable to them, the procedural posture of this Action, and the risks of continued litigation against Defendants, the Settlement is fair, reasonable and adequate, and represents a beneficial result for the Class and should be approved by this Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: December 22, 2017

/s/ Leigh Handelman Smollar
Leigh Handelman Smollar
Pomerantz LLP


/s/ Adam M. Apton
Adam M. Apton
Levi & Korsinsky, LLP

_____

18